This is an appeal from a judgment of the Mobile County Probate Court ordering renewal of the inpatient commitment of William E. Thomas to the Alabama Department of Mental Health and Mental Retardation (Department).
Thomas was originally committed to the custody of the Department by order of the probate court in April 1986, suffering from what was diagnosed as a delusional disorder. Since his commitment he has been confined in the Department's facility at Searcy Hospital, where he continues to receive inpatient treatment for his mental illness.
On May 11, 1992, the director of Searcy Hospital filed a petition to renew Thomas's commitment, alleging that Thomas continued to suffer from a mental illness that rendered him unable to function outside of a highly structured environment. A hearing was held before a special probate judge on May 27, 1992, and after presentation of ore tenus evidence, the probate court granted the petition to renew Thomas's commitment for a period not to exceed one year.
Thomas now appeals to this court pursuant to Ala. Code 1975, § 22-52-15. Before proceeding with the substance of Thomas's appeal, we find it necessary to provide certain background information.
In 1991, in Wyatt v. King, 773 F. Supp. 1508 (M.D.Ala. 1991), the federal district court held that the state of Alabama must conduct periodic judicial review of the need for continued confinement of persons involuntarily committed to the state's mental health institutions. The court further held *Page 20 
that these recommitment proceedings must comport with the same procedures and standards mandated for initial commitments, as had been set forth and imposed through a permanent injunction ordered by the federal district court in Lynch v. Baxley,386 F. Supp. 378 (M.D.Ala. 1974) (three-judge panel), rev'd on othergrounds, 651 F.2d 387 (5th Cir. 1981).
Lynch provided, inter alia, that in order to satisfy minimum due process requirements, no person in this state shall be involuntarily committed to the custody of the Department unless the probate court, after a final hearing, finds clear andconvincing evidence of the following five criteria: (1) that the individual is mentally ill; (2) that the individual poses a real and present threat of substantial harm to himself or others; (3) that the danger has been evidenced by a recent overt act of the individual; (4) that there is treatment available or that confinement is necessary for the well-being of the community and the individual; and (5) that commitment is the least restrictive alternative necessary and available for treatment of the person's illness. See generally Lynch,386 F. Supp. 378.
In 1975, responding to the Lynch injunction, Alabama repealed its previous commitment statutes and enacted new comprehensive legislation. The new legislation essentially codified the procedures and standards set forth in Lynch. See §§ 22-52-1
through -37, Ala. Code 1975.
When entering its judgment in 1991, the Wyatt court directed the state to formulate and submit a plan for implementation of certain "additional procedures" that the court found to be necessary in the context of recommitment proceedings. Thereafter, the state filed with the court a revised implementation plan wherein the state proposed using §§ 22-52-1
through -37, Ala. Code 1975, as amended in 1991 by Alabama Act No. 91-440, as the mechanism for conducting recommitment proceedings. The federal court entered an order approving this implementation plan, to the extent that the state's statutory scheme is consistent with the provisions of Lynch and Wyatt.Wyatt v. King, civil action No. 3195-N (unpublished order, Dec. 19, 1991). However, the court declined to specify the precise extent to which the Alabama statute, as amended, comports with the due process safeguards previously mandated by the federal court. (We note that the state currently has a motion before the federal court to vacate or modify the Lynch injunction so that state mental health officials may in the future proceed solely under state law.)
In view of the foregoing, we are compelled to conclude that the operative law in the case sub judice is provided by §§22-52-1 through -37, as amended by Act No. 91-440, Ala. Acts 1991, insofar as this statute is consistent with Lynch andWyatt.
In its written order renewing Thomas's commitment, the probate court stated in pertinent part as follows:
 "The court finds from clear and convincing evidence adduced in open hearing that said respondent is mentally ill; that as a result of the mental illness, the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; that the respondent is unable to make a rational informed decision as to whether treatment for the mental illness would be desirable; that the respondent poses a real and present threat of substantial harm to others; that said respondent has committed an overt act for which a factual basis for continued confinement has been shown and is supported by clear and convincing evidence; that there is treatment available for the mental illness diagnosed; that inpatient commitment to the . . . Department . . . or its designated facility is the least restrictive alternative necessary and available for the treatment of the person's mental illness; and accordingly, said petition is due to be granted."
The probate court's order tracks in large part the language of §§ 22-52-10.4 and -37(a)(7), Ala. Code 1975, as well as the criteria established by Lynch. *Page 21 
On appeal Thomas contends that the evidence adduced at the hearing was insufficient to support the probate court's order granting the hospital director's petition for recommitment. More specifically, he maintains that the record is devoid of evidence of a recent overt act on his part that would indicate that he poses a real and present threat of substantial harm to himself or others.
We take note of the presumption of correctness that accompanies a trial court's findings of fact in an ore tenus proceeding; the trial court's judgment will not be reversed on appeal unless it is shown to be plainly and palpably wrong.Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989).
The record reveals that Thomas was originally committed to the Department's custody in 1986 when he was found carrying a shotgun in the vicinity of the Mobile County courthouse after having made threats on the life of a circuit court judge.
At the recommitment hearing Dr. William Kringle, Thomas's treating psychologist at Searcy Hospital, testified that, in his opinion, Thomas is mentally ill, with a current diagnosis of organic delusional disorder combined with polysubstance abuse and antisocial personality disorder. Dr. Kringle testified that Thomas's delusional disorder manifests itself in a fixed delusional system that remains unchanged over time. Some of Thomas's delusions, according to Dr. Kringle, are that specific judges in Mobile County have entered into a conspiracy against him and are involved in sexual relationships with him; that President Reagan has taken his children and from time to time visits his home in a silver suit; and that the supreme court justices have magical dust that they can sprinkle on themselves in order to disappear.
Dr. Kringle further testified that Thomas is undergoing a comprehensively structured treatment program dealing with social skills, work habits, and personal grooming. He stated that Thomas also receives antipsychotic medication. According to Dr. Kringle, when Thomas is taken off this medication, his delusions become more intense, and he becomes combative against the hospital staff. Dr. Kringle testified that when Thomas is taking his medication, he is not assaultive or aggressive, but that even when taking the medication, he has a compulsion and practice of telephoning state and federal judges and the FBI to talk about his delusions. In Dr. Kringle's opinion, if Thomas were released from Searcy Hospital, he would not continue to take his medication, because Thomas has indicated that he does not believe he is mentally ill or that he is in need of medication. Dr. Kringle felt that Thomas would also neglect to take medication in an unstructured environment because of forgetfulness and his inability to follow a medical regimen. He testified that he believes Thomas's mental illness is not in remission.
The above factors led Dr. Kringle to conclude that if Thomas does not receive continued treatment, his delusions will persist, he will become more aggressive, he will continue to believe that various judges are in a conspiracy against him, and he will possibly arm himself with a weapon and harm someone. It was Dr. Kringle's opinion that Thomas poses a real and present threat of substantial harm to himself or others and that he is more dangerous to others than to himself. Dr. Kringle indicated that he feels Thomas is an unsuitable candidate for post-hospital placement, that further inpatient treatment is available and necessary, and that Searcy Hospital is the least restrictive alternative necessary for Thomas's continued treatment.
Thomas claims that the only evidence of an overt act indicating that he is dangerous to himself or others was the act resulting in his original commitment in 1986. He maintains that any act on his part in 1986 cannot suffice as a requisiterecent overt act.
However, it is clear to this court that the requisite "overt act" for a person who is presently confined and receiving treatment is not the same type of "overt act" necessary for the initial commitment of a person at liberty. As support for this conclusion, we observe that in May 1975, in response to substantial difficulties that various *Page 22 
parties were experiencing in interpreting the mandates of theLynch injunction, the Lynch court entered an unpublished order wherein it sought to clarify the "recent-overt-act" requirement in the context of recommitment. The court stated that an individual's need to be recommitted to the custody of the Department
 "may not be readily demonstrable by the same type of 'recent overt act' which is constitutionally prerequisite to the commitment of an individual at liberty. In such cases, the need for recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary for the patient's health and well-being. The fact of present confinement is not alone sufficient to justify continued confinement; neither is the testimony of staff personnel predicting adverse consequence of release from confinement if that testimony is based wholly on opinion and is unsupported by any facts or occurrences which would lead a reasonable man to concur in the recommendation for recommitment. In order for a patient to be recommitted . . . the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued confinement is necessary."
Lynch v. Baxley, civil action No. 74-89-N (M.D.Ala. May 8, 1975). While the federal court in Wyatt v. King, 781 F. Supp. 750,753 (M.D.Ala. 1991), held that the 1975 Lynch order did not eliminate the recent-overt-act requirement, the court concluded that the order clarified the requirement's definition "to meet the demands of the recommitment context by interpreting it morebroadly." (Emphasis supplied.)
We find that the testimony of Dr. Kringle satisfied the broader definition of a "recent-overt-act" applicable in a recommitment context by establishing a clear and convincing factual basis for the probate court's finding that Thomas poses a present threat of substantial harm to others. Dr. Kringle presented supporting facts for his diagnosis that Thomas's mental illness is not in remission. Thomas is presently confined and receiving antipsychotic medication. When taken off the medication, he has become assaultive. Even on medication, he remains delusional and continues to telephone judges who are the subjects of his delusions, including the judge whose life he threatened in 1986. Further, Thomas does not believe he is mentally ill or that he needs to take medication. Testimony at the hearing indicated that Thomas's temporary visits and day passes away from the hospital have proven unsuccessful. These are facts or occurrences creating more than a mere expectancy that Thomas might engage in danger-productive behavior and which would lead a reasonable person to concur that recommitment is necessary. See Lynch, 386 F. Supp. at 391.
This court has previously stated that if an individual is no longer dangerous because he is on medication or in a structured environment, whether he will take his medication or be in a structured environment after release should be considered prior to release. Winchester v. Bartlett, 532 So.2d 1258
(Ala.Civ.App. 1988).
In view of the foregoing and in light of the applicable legal principles, we find no error in the probate court's judgment ordering Thomas's recommitment to the Department's custody. The probate court's judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.