This is a recommitment case.
In May 1992 the Director of Searcy Hospital petitioned to renew Joseph Taylor's inpatient commitment to the custody of the Alabama Department of Mental Health and Mental Retardation (Department). After an ore tenus hearing, the probate court granted the petition, renewing Taylor's commitment for a period not to exceed one year. Taylor appeals.
As discussed at length by this court in Thomas v. State Dep'tof Mental Health Mental Retardation, [Ms. 2910493, December 11, 1992], 1992 WL 362095 (Ala.Civ.App. 1992), recommitment hearings in Alabama proceed under the auspices of §§ 22-52-1
through -37, Ala. Code 1975, and must also comport with the procedures and standards mandated for initial commitments by the federal district court in Lynch v. Baxley, 386 F. Supp. 378
(M.D.Ala. 1974), rev'd on other grounds, 651 F.2d 387 (5th Cir. 1981). *Page 283 
In the case sub judice the probate court's final order contained the requisite findings necessary to support an order of commitment pursuant to the standards established in Lynch, as well as those codified at §§ 22-52-10.4 and -37(7), Ala. Code 1975. Among the requisite findings, which must be supported by clear and convincing evidence, is that the person sought to be committed (or recommitted) presents a threat of substantial harm to himself or others, as evidenced by "a recent overt act." Lynch, 386 F. Supp. 378.
On appeal Taylor contends that there was no showing of a recent overt act on his part demonstrating that he poses a threat of substantial harm to himself or others.
This court has recognized that because the need for recommitment of an individual who is presently confined and receiving treatment for a mental illness in a state facility is not readily demonstrable by the same type of "recent overt act" prerequisite to an initial commitment, the requirement is to be interpreted more broadly in the context of recommitment.Thomas, 1992 WL 362095. In order to satisfy the requirement in a recommitment context, the individual's dangerousness to himself or others must be evidenced by some factual basis supporting the treating facility's recommendation for recommitment; there must be facts or occurrences that clearly and convincingly lay a basis for the conclusion that continued custody is necessary for the person's health and well-being.Lynch v. Baxley, civil action No. 74-89-N (M.D.Ala. May 8, 1975) (unpublished order); § 22-52-37(7), Ala. Code 1975.
We note that a presumption of correctness accompanies a trial court's findings of fact in an ore tenus proceeding and that the trial court's judgment will not be reversed on appeal unless it is shown to be plainly and palpably wrong. KnoxKershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989).
The record reveals that Taylor was originally committed to the custody of the Department in 1979. Dr. William Kringle, Taylor's treating psychologist at Searcy Hospital, testified at the May 1992 recommitment hearing that Taylor currently suffers from a mental illness diagnosed as "schizophrenia, chronic undifferentiated type." According to Dr. Kringle, Taylor's illness manifests itself in an elaborate system of delusional beliefs fixated upon world conquest. Among Taylor's delusions are his convictions that he is raising a large army, that he is a victim of a government plot, and that he receives secret messages over the telephone and television. Dr. Kringle indicated that Taylor is being treated with antipsychotic medication and comprehensive behavioral therapy.
Dr. Kringle stated that he believes Taylor is not now a suitable candidate for release to a less restrictive environment and that if Taylor does not continue to receive structured treatment, his delusions will worsen. It was his professional opinion that Taylor poses a real and present threat of substantial harm to himself or others, and that he is more dangerous to others than to himself. Dr. Kringle based his opinion upon the following facts and occurrences: Taylor recently threw milk in the face of a hospital staff worker because he thought it was poisoned; Taylor continues to be delusional, even while on antipsychotic medication; Taylor recently struck another patient in an incident that was apparently a result of a delusional episode by Taylor; during a four-month period in 1991, Taylor was combative and abusive toward the staff and other patients; Taylor has refused to allow the staff to give him physical examinations; Taylor's mental illness is apparently not stable or in remission; Taylor continues to harbor a concept of taking over a form of government that could reasonably be assumed to be achieved through assassination; and Taylor does not believe that he is mentally ill.
We conclude that, in the context of a proceeding for recommitment, the testimony of Dr. Kringle provided a sufficient factual basis to support the probate court's finding that there had been a "recent overt act" evidencing Taylor's dangerousness to himself or others. The facts and occurrences attested to by Dr. Kringle create more than a mere expectancy that Taylor *Page 284 
might engage in danger-productive behavior and clearly and convincingly lay a basis for the conclusion that Taylor's continued custody and treatment by the Department are necessary. See Lynch, 386 F. Supp. at 391.
We can find no error in the judgment of the probate court; accordingly, that judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.