This is a recommitment case.
Initially, we note that the controlling case law for the instant case has been addressed at length by this court inThomas v. State Dep't of Mental Health Mental Retardation,620 So.2d 18 (Ala.Civ.App. 1992). In Thomas, this court discussed the applicability of Wyatt v. King, 773 F. Supp. 1508
(M.D.Ala. 1991), and Lynch v. Baxley, 386 F. Supp. 378
(M.D.Ala. 1974), rev'd on other grounds, 651 F.2d 387 (5th Cir. 1981), to recommitment cases in Alabama.
Michael Dixon was originally committed to the custody of the State Department of Mental Health and Mental Retardation (Department) on February 17, 1993, for a period not to exceed 150 days. In June 1993 the designee of John T. Bartlett, the Director of Searcy Hospital, filed a petition to renew inpatient commitment of Dixon.
Following an ore tenus hearing, the probate court granted the petition, renewing the commitment of Dixon for a period not to exceed nine months. Dixon appeals.
The dispositive issue is whether the Department presented sufficient evidence that Dixon had committed a recent overt act, demonstrating that he posed a real and present threat of substantial harm to himself or others, as required byLynch, 386 F. Supp. 378, and discussed in Thomas, 620 So.2d 18.
Our review of the record reveals that Dixon's treating psychologist testified at the recommitment hearing. The psychologist stated that Dixon's diagnosis was the Axis I diagnosis of schizophrenia, undifferentiated type, unspecified, which is a mental illness.
The psychologist testified that Dixon does not believe that he has a mental illness and that he does not think that he needs his medication. He further testified that Dixon still does not understand why his mother wanted him to go to a mental health center and that Dixon thinks that other people can read his thoughts.
The testimony of the psychologist indicated that Dixon was being treated with medication and group therapy. Dixon's chart at Searcy instructs the mental health workers to make sure that he takes his medications and to supervise him with his grooming and his hygiene. At the time of his original commitment, Dixon had not been to a mental health center in over five years, had refused to take medication of any kind, had not cut his hair in years, and did not change clothes for a month at a time.
The psychologist testified that although Dixon is currently on medication, his thinking is still very disorganized, fragmented, and loose. As an example, the psychologist testified that in an interview the day before the recommitment hearing, he questioned Dixon about the bottles of urine that he kept in his room prior to his commitment. Dixon told him that his sister's bedroom was on the other side of the bathroom and that if he woke her between midnight and 6 a.m., she would get in a car wreck. At this same interview, Dixon thoroughly examined the bottom of his shoes and his chair for thumbtacks before he sat down.
The psychologist opined that, if released, Dixon would stop taking his medication and that, as a result, his psychotic condition and obsessive-compulsive behaviors would get worse and he would regress. The psychologist testified that Dixon might start walking great distances at night in his bare feet and return with swollen and discolored feet, as he was doing prior to his commitment. Consequently, if released, Dixon would pose a threat of substantial harm to himself.
It was the opinion of his treating psychologist that Searcy Hospital was currently the least restrictive setting necessary for Dixon's care.
In the context of this proceeding for recommitment, we conclude that the testimony of the treating psychologist provided a sufficient, factual basis to support the trial court's finding that there had been a recent overt act, demonstrating Dixon's possible danger to himself or others and justifying recommitment. The facts and occurrences referred to in the testimony of the treating psychologist create more than a mere expectancy that *Page 493 
Dixon, if released, or if placed in a less restrictive environment, might engage in behavior which would pose a substantial threat of harm to himself. These same facts and occurrences are also clearly and convincingly the basis for the conclusion that Dixon's continued custody and treatment by the Department was necessary. Lynch, supra; Thomas, supra.
Because we find no error on the part of the probate court in entering an order renewing inpatient commitment, we affirm.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.