Jean P. LYNCH, etc., Plaintiffs,

Jessie M. Hughes, et al., Intervening Plaintiffs,

v.

Jeff SESSIONS, as Attorney General of the State of Alabama; Walker Hobbie, Jr., as Probate Judge of Montgomery, Alabama, and as a representative of all other Alabama probate judges; Virginia A. Rogers, as Commissioner of the Alabama Department of Mental Health and Mental Retardation, Defendants.

Civil Action No. 74–A–89–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 30, 1996.

Robert David Segall, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, David Ferleger, Philadelphia, PA, Ralph I. Knowles, Jr., Doffermyre, Shields, Canfield & Knowles, Atlanta, GA, for plaintiff Jean P. Lynch.

Robert David Segall, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, for intervenor-plaintiff Jesse M. Hughes.

William L. Irons, Birmingham, AL, for intervenor-plaintiff Ronald Gibson.

William H. Pryor, Jr., Office of the Attorney General, Montgomery, AL, for defendant Jeff Sessions.

Mary Elizabeth Culberson, William H. Pryor, Jr., Office of the Attorney General,

Montgomery, AL, for defendant Walker Hobbie, Jr.

Algert S. Agricola, Jr., Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery, AL, Gregory Dale Crosslin, James D. McLaughlin, Rebecca W. Pritchett, Sasser & Littleton, P.C., Montgomery, AL, Charles B. Campbell, Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL, G.R. (Rick) Trawick, Department of Mental Health & Mental Retardation, Bureau of Legal Services, Montgomery, AL, for defendant Virginia A. Rogers.

Before COX, Circuit Judge, and
HANCOCK and ALBRITTON, District Judges.

### Memorandum Opinion

ALBRITTON, District Judge.

This case is presently before the Court on the Defendants' Motion, filed on November 29, 1991, to Vacate or Modify the Permanent Injunction initially entered in this case on December 14, 1974. The Defendants predicate their Motion to Vacate on the 1991 enactment of amendments to the Code of Alabama providing for the involuntary commitment and recommitment of mentally ill persons.

▮▮▮ The case, pending since 1974, was reassigned to this judge on March 29, 1996. On June 3, 1996, Defendant Charles A. Fetner, the then Acting Commissioner of Mental Health and Mental Retardation, filed a motion requesting that a three-judge district court be convened pursuant to 28 U.S.C. § 2281 (1970) (repealed 1976), to hear any further proceedings concerning the constitutionality of the 1991 statute. This three-judge district court was designated by order of the Chief Judge of the United States Court of Appeals for the Eleventh Circuit entered on June 14, 1996. On July 12, 1996, the three-judge court issued an order instructing the parties that the Defendants' Motion to Vacate would be decided by the three-judge district court.[1] Briefs were filed by the parties and on September 9, 1996, a hearing was held at which time all parties presented oral argument on the Motion to Vacate. None of the parties requested an evidentiary hearing on the Motion to Vacate; all advised the court that an evidentiary hearing was not necessary.

### Procedural History

The present case was commenced in 1974 as a class action against the Attorney General of the State of Alabama, the Commissioner of the Alabama Department of Mental Health and Mental Retardation, and the Probate Judges of the State of Alabama. The class consisted of those persons who had been involuntarily committed, or arrested to be so committed, to an Alabama mental health facility. On December 14, 1974, a three-judge court composed of Senior U.S. Circuit Judge Richard T. Rives and U.S. District Judges Frank M. Johnson and Robert H. Varner issued the injunction which is the subject of the present motion. The three-judge court found that the commitment standards prescribed by then-existing statutes, Title 15, Section 432, and Title 45, Section 210, Code of Alabama, violated due process because they did not provide for a probable cause hearing within a reasonable time of detention, failed to require the presence of the person being committed or their appointed counsel at the hearing, and contained ill-defined standards for commitment. The statutes were declared unconstitutional and void, and the injunction provided that future commitments must be predicated on clear, unequivocal, and convincing findings that:

(a) the person to be committed is mentally ill;

(b) the person to be committed poses a real present threat of substantial harm to himself or to others;

---

1. Although three-judge district courts have not been required in cases challenging the constitutionality of state statutes since 1976, such a court is appropriate in this case because the injunction in question was issued by a three-judge court before the 1976 repeal of such a requirement. The only issue before the court is whether the injunction should now be dissolved or vacated for the reasons discussed in this opinion. Any constitutional challenge to the 1991 Act which involves issues raised by provisions in the new legislation which are outside the scope of the existing injunction must be made by a new action brought by a person with standing to do so. Such a new constitutional challenge would be heard by a single district judge.

(c) the danger posed by the person to be committed has been evidenced by a recent overt act;

(d) there is treatment available for the illness diagnosed, or that, if no treatment is available, confinement is necessary for the safety and well-being of the community and of the person to be committed; and

(e) the proposed commitment is the least restrictive alternative necessary and available for treatment of the person's mental illness.

The injunction also required procedural safeguards such as the right to adequate notice, the right of the person in question to attend the hearing, notice of the right to counsel, and the appointment of counsel for indigent persons. *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974).

On May 8, 1975, the three judge panel issued an order clarifying the injunction.[2] With respect to first time commitments, the court explained that the need for confinement must be demonstrated by "clear and convincing evidence of the real and present danger which he poses to himself or to others." With respect to recommitment proceedings, the court explained that "the need for recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary...." At the recent oral argument on the Defendants' Motion to Vacate, Plaintiffs' counsel took the position that this order effectively deleted the injunction's absolute requirement of a finding of a recent overt act as a predicate for commitment or recommitment, thus mooting any possible issue as to whether due process requires such a finding. The counsel for the Defendants agreed.

The State of Alabama enacted a new civil commitment statute in 1975. 1975 Ala. Acts No. 1226 (codified as amended at Ala.Code §§ 22–52–1, et seq. (1990)). This statute provided for a probable cause hearing within seven days of detention and a final hearing within thirty days of the receipt of the commitment petition. Furthermore, the statute provided for the appointment of an attorney for the person to be committed, and for the presence, at all hearings, of the person to be committed and his attorney. Finally, the statute established a clear standard for determining when commitment was appropriate. In response to this statute, the Plaintiffs filed a Motion for Further Relief, contending that the statute's provisions permitting emergency detention in jails of persons awaiting commitment to mental health facilities violated due process, constituted cruel and unusual punishment, and deprived these persons of equal protection. Following the intervention of a plaintiff with proper standing, the Eleventh Circuit held the emergency provisions unconstitutional because they violated substantive and procedural due process. *Lynch v. Baxley,* 744 F.2d 1452 (11th Cir.1984).

No further action was taken in this case until the Alabama Legislature once again revised the involuntary commitment statute in 1991. 1991 Ala. Acts No. 91–440 (codified as amended at Ala.Code § 22–52–1.1 et seq. (1995 Supp.)) The new statute eliminated the emergency detention provisions of the 1975 law and provided commitment and recommitment procedures for persons committed to state mental health facilities.

Based on the 1991 statute, Defendant Royce King, then Commissioner of the Alabama Department of Mental Health and Mental Retardation, filed a Motion to Vacate or Modify the permanent injunction entered on December 14, 1974. On July 29, 1996, the Alabama Probate Judges joined the Department of Mental Health and Mental Retardation in the Motion to Vacate or Modify the permanent injunction. The Defendants say that Alabama statutory law is now in compliance with the orders of this court, and that, therefore, this court's injunction should now be vacated and this case dismissed. The Plaintiffs object and ask the court to deny the motion and to keep this case open.

### Discussion

A well settled limitation on the power of federal judicial authority is that the nature and scope of the remedy must be determined by the violation. *See Milliken v. Bradley,*

---

**2.** A copy of the May 8, 1975, order is attached as Appendix to this Memorandum Opinion.

433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). Therefore, since the injunction in this case was based on constitutional deficiencies in Alabama's commitment and recommitment procedures, the present injunction must directly address and relate to those constitutional violations. *See, e.g., Board of Education of Oklahoma City Schools v. Dowell,* 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991); *Milliken,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). "[F]ederal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation...." *Milliken,* 433 U.S. at 281, 97 S.Ct. at 2758.

■ A prospective injunction, such as the one presently before the court, is only justifiable "insofar as it advances the ultimate objective of alleviating the initial constitutional violation." *Freeman v. Pitts,* 503 U.S. 467, 489, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992). Accordingly, a court of equity has the intrinsic authority to vacate or modify its prospective decrees as events warrant. *See United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). *See also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (1995) and cases cited therein. The Federal Rules of Civil Procedure reflect this authority and provide that "the court may relieve a party ... from a final judgment, order or proceeding ... [when] it is no. longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5).

The Supreme Court of the United States first addressed the issue of modifying an injunction in the case of *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In *Swift,* Justice Cardozo stated that "a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Id.* at 114–15, 52 S.Ct. at 462. However, Justice Cardozo also observed the distinction between "re-

straints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Id.* at 114, 52 S.Ct. at 462. The Eleventh Circuit recognized this distinction in the case of *Hodge v. Department of Housing and Urban Development, Housing Division, Dade County, Florida,* 862 F.2d 859 (11th Cir.1989). The court in *Hodge* held that "The injunction here is intended to effect institutional reform. By its terms the order requires ongoing court supervision, and therefore it is provisional. Thus ... modification may be granted more freely." *Id.* at 864.[3]

The Supreme Court also has rejected the application of the stringent "instrument of wrong" requirement of *Swift* to injunctions in institutional reform cases. In *Board of Education of Oklahoma City Schools v. Dowell,* 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991), the district court had reached the conclusion that the injunction under which the school district was governed should be vacated and the district returned to local control. *Id.* at 243, 111 S.Ct. at 634–35. The Tenth Circuit had reversed, holding that "an injunction takes on a life of its own and becomes an edict quite independent of the law it is meant to effectuate." *Dowell v. Board of Ed. of Oklahoma City Schools,* 890 F.2d 1483 (1989). The Tenth Circuit held that a desegregation decree remains in effect until "grievous wrong evoked by new and unforeseen conditions" is shown. *Id.* at 1490 (quoting *Swift* ). The Tenth Circuit also held that "compliance alone cannot become the basis for modifying or dissolving an injunction." *Id.* at 1491. The Supreme Court reversed, explaining that "[c]onsiderations based on the allocation of powers within our federal system, we think, support our view that quoted language from *Swift* does not provide the proper standard to apply to injunctions entered in school desegregation cases. Such decrees, unlike the one in Swift, are not intended to operate in perpetuity."

---

**3.** Although the court in *Hodge* discussed the "modification" of injunctions, the issue before the court was whether to dissolve an injunction.

*Dowell,* at 248, 111 S.Ct. at 637. Rather, the Supreme Court emphasized that, "Dissolving a desegregation decree after the local authorities have operated in compliance with it for a reasonable period of time properly recognizes that 'necessary concern for the important values of local control of public school systems dictates the time required to remedy the effects of past intentional discrimination.'" *Id.* (quoting *Milliken v. Bradley,* 433 U.S. at 280–82, 97 S.Ct. at 2757–58). Moreover, the Supreme Court explained that "a finding by the District Court that the Oklahoma City School District was being operated in compliance with the commands of the Equal Protection Clause, and that it was unlikely that the school board would return to its former ways, would be a finding that the purposes of the desegregation litigation had been fully achieved." *Dowell,* at 247, 111 S.Ct. at 636. The court held that no further showing was necessary. *See Id.*

The Supreme Court articulated the standards to apply in deciding whether to vacate an institutional reform consent decree in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). In *Rufo,* the Supreme Court stated that under Rule 60(b)(5) "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* at 383, 112 S.Ct. at 760. If that burden is satisfied, the court considers whether the proposed modification is suitably tailored to the changed circumstance. *Id.*

Relying on the Supreme Court's reasoning in *Dowell* and *Rufo,* the Eleventh Circuit held that the test articulated in *Rufo* was applicable to requests to modify or terminate decrees in employment discrimination class action cases. *United States v. City of Miami,* 2 F.3d 1497, 1506 (11th Cir.1993). Furthermore, the Eleventh Circuit held that a district court has the authority to consider *sua sponte* whether the termination of an injunction is appropriate. *Id.* at 1506. In *City of Miami,* the court expressed its concern that:

> [O]ur experience teaches us that on some occasions public employers prefer the supervision of a federal court to confronting

directly its employees and the public. We urge the City to seek termination of the decree as soon as possible. In fact, one appropriate inquiry for the district court to make is whether any party wishes to continue the consent decree and if so why. *Id.* at 1507.

In the present case, the Plaintiffs oppose the Defendants' Motion to Vacate or Modify on several grounds. First, the Plaintiffs maintain that, as the case is presently structured, there is no case or controversy with respect to the Defendants' motion because there is no Plaintiff in a position to oppose the motion. Next, the Plaintiffs argue that the injunction is not an institutional reform injunction, and therefore the Defendants' motion must be judged under the strict standard enunciated by the Supreme Court in *Swift,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). The Plaintiffs maintain that the Defendants have not met this standard and therefore the motion should be denied. Finally, the Plaintiffs assert that if the Court finds that the less stringent standard outlined in *Rufo* is the appropriate standard, the Defendants have failed to meet this standard as well.

The Plaintiffs' first argument is that there is no case or controversy between the Plaintiff class and the Defendants regarding the 1991 commitment law. The Plaintiffs assert that the Defendants, in effect, are asking the court for an advisory opinion on the constitutionality of the 1991 commitment statute. The Plaintiffs contend that they do not object to, or seek relief from, the new statute; that there is no member of the Plaintiff class who has been committed under the 1991 statute; and that, therefore, the Defendants' motion is non-justiciable. At oral argument, the Plaintiffs asserted that, given their present stance in the suit, there is no party challenging the constitutionality of the 1991 statute and, therefore, it would be improper for this court to grant the Defendants' motion.

The court believes that the Plaintiffs have misunderstood the fundamental nature of an injunction issued by a federal court. As discussed above, the present injunction is justifiable "only insofar as it advances the ultimate objective of alleviating

the initial constitutional violation." *Freeman*, 503 U.S. at 489, 112 S.Ct. at 1445. When a defendant believes that the ultimate objective of the injunction has been reached, that party should endeavor to relieve the federal court of its regulatory role as soon as possible. That is exactly what the Defendants in this case have done. The Defendants have not requested an advisory opinion of the constitutionality of the 1991 statute. Rather, the Defendants have moved this court to vacate the injunction in this case, which has been in existence for approximately twenty-two years, in order to now allow them to function solely under the 1991 state legislation. That legislation merely provides the basis for the Defendants' request.[4]

Under Rule 60(b)(5) a court may relieve a party from a final judgment, order, or proceeding when it is no longer equitable that the judgment should have prospective application. Fed.R.Civ.P. 60. The Plaintiffs' case or controversy argument ignores the concern for the allocation of power provided by our federal system emphasized by the Supreme Court in *Dowell* and the Eleventh Circuit in *City of Miami*. The injunction issued in 1974 was based upon the request of, and for the protection of, the Plaintiff class. As stated in *City of Miami*, it is proper for the court to inquire whether any party desires the continuation of the injunction and, if so, why. The Plaintiffs' argument is essentially a non-reason. The Plaintiffs assert that no member of the class has been committed under the new statute and therefore the class is not in a position to challenge the 1991 statute. However, as long as the 1974 injunction is in place the Plaintiff class will have the benefit of it and will never be subjected to the standards of the 1991 statute. Therefore, if the Plaintiffs' argument is accepted, there will never be a case or controversy and the injunction will continue to operate in perpetuity. Plaintiffs' argument ignores the proper nature of federal involvement in state and local affairs as espoused by the Supreme Court. All parties who participated in the 1974 proceedings are presently

before the court, and the court will address the merits of the Defendants' motion.

■ The Plaintiffs also assert that the 1974 injunction is not an institutional reform injunction, but rather a statement of minimum constitutional rights which does not require the court to supervise state operations. The court first finds that, contrary to the Plaintiffs' position, the present injunction, under which the Alabama Department of Mental Health and Mental Retardation, and the Alabama Probate Judges, have been operating, is properly characterized as an institutional reform injunction. First, the fundamental objective of the injunction is not to serve as a statement of constitutional rights, but rather to reform the procedures under which the State of Alabama conducts commitment and recommitment hearings to conform to the constitutionally mandated requirements of due process. As such, the injunction reaches beyond the parties directly involved in the suit and affects the right of the public in the sound and efficient operation of their state institutions. *See Heath v. DeCourcy*, 888 F.2d 1105, 1109 (6th Cir.1989) ("While institutional consent decrees are similarly born by agreement between the parties, they affect more than the rights of the immediate litigants"). Also, the entities which are the subject of the injunction are integral participants in the State of Alabama's mental health institutions. The court therefore finds that the present injunction is an institutional reform injunction. *See also Brewster v. Dukakis*, 3 F.3d 488 (1st Cir. 1993) (characterizing an injunction in a mental health suit as an institutional reform injunction.) Therefore, the Defendants' Motion to Vacate or Modify is not subject to the stringent standard articulated by the Supreme Court in *Swift*.

■ The Plaintiffs maintain that the Motion to Vacate or Modify should be denied since the Defendants have not satisfied their burden under Rule 60(b). The Plaintiffs assert that the Defendants have failed to establish either element of the test articulated in *Rufo* and therefore the Defendants' motion is

---

4. The dissolution of an injunction based on subsequently enacted legislation can be traced back to the case of *Pennsylvania v. Wheeling & Bel-*

*mont Bridge Company*, 59 U.S. 421, 15 L.Ed. 435 (1856).

due to be denied. The Supreme Court decision in *Rufo* requires that in order to modify an injunction the movant must (1) establish that a significant change in circumstances justifies revising the decree; and, (2) that the proposed modification (dissolution) is appropriately tailored to the change in circumstances. *Rufo*, 502 U.S. at 383, 112 S.Ct. at 759–60. The change in circumstances can be satisfied by either a change in factual conditions or a change in law. *See Id.* The Plaintiffs argue that the Defendants have not shown any change in the law or facts, and that without some demonstration of a conflict between the 1974 standards and the present standards the court cannot properly modify or vacate the injunction.

The court first notes that in the present case, as in the Supreme Court case of *Dowell*, the Defendants have been operating in compliance with an injunction for well over fifteen years. In their brief in opposition to the Defendants' motion, the Plaintiffs concede that there is no dispute in this case that the Defendants have complied with the 1975 injunction,[5] and only take issue with whether or not compliance can constitute changed circumstances under *Rufo*. However, the Plaintiff's argument is misplaced. In *Dowell*, the Supreme Court remanded the case to the district court to decide whether the defendant had shown sufficient compliance with the desegregation decree to allow the injunction to be dissolved. *Dowell*, 498 U.S. at 250, 111 S.Ct. at 638.

■ The objective of the injunction in this case was to bring the standards and procedures for commitments and recommitments in the State of Alabama into compliance with the constitutional dictates of due process. The court has examined the documents filed by the Defendants which reflect the findings

made by the Alabama Probate Courts in individual recommitment hearings.[6] These documents, on their face, provide evidence that the Defendants are complying with each and every standard enunciated in the injunction issued by this court. Furthermore, the court finds that there is no indication that the Defendants will, upon dissolution of the injunction, attempt to avoid the requirements of due process. Finally, the State of Alabama enacted in 1991 a statute designed to bring the laws of Alabama into agreement with the requirements of constitutional due process. The Plaintiffs conceded in their brief and at oral argument that there are no conflicts between the 1991 statute and the 1974 injunction as clarified in 1975. There is no contention that the Defendants have not complied with the requirements of the present injunction since its issuance in 1974. The court therefore finds that the ultimate objective of the injunction has been attained and control over the commitment and recommitment process should be relinquished to the Defendants under the criteria announced in *Dowell*.

Applying the test enunciated by the Supreme Court in *Rufo* leads the court to the same conclusion. The first factor under *Rufo* requires the Defendant to establish a significant change in factual conditions or in law. 502 U.S. at 384, 112 S.Ct. at 760. The Plaintiffs argue that since there is no demonstrated conflict between the 1991 statute and the 1974 injunction, the Defendant cannot establish a change in legal or factual circumstances. The court is of the opinion that this argument ignores both the role of the federal courts and the law regarding dissolution of injunctions. As the Eleventh Circuit noted in *Hodge*, "[a] change in relevant statutory

---

5. The Plaintiffs apparently are referring to the order of the three-judge court dated May 8, 1975, which was intended to clarify the previous order of December 14, 1974, and does not constitute a separate injunction.

6. These documents were filed with the court pursuant to the Defendants' motion to accord several hundred pages of individual recommitment orders full faith and credit and to have the recommitments declared consistent with the criteria required by the orders entered in this case.

The court finds that there is no case or controversy with respect to this issue and the Defendants' request is not appropriate in this case. This court is not an open forum from which the Defendants can seek declarations of compliance with the *Lynch* criteria. There is no allegation that the parties to this suit are in fact challenging the recommitments. Such a finding must be sought in a new action which has all proper parties before it. This motion is therefore due to be denied on the basis that it presents no case or controversy.

law ... is a fully adequate basis upon which modification to a consent decree may be based." 862 F.2d at 865 (quoting *Williams v. Butz,* 843 F.2d 1335, 1338 (11th Cir.1988)). The court finds that Alabama's passage of the 1991 statute constitutes a significant change in factual circumstances. This change in circumstances fulfills the ultimate objective of the injunction and therefore obviates the continuing need for federal supervision in the form of the present injunction. The 1991 statute therefore satisfies the second prong of *Rufo* as well.

### Conclusion

All litigation must come to an end. This suit was filed nearly twenty-two years ago for the purpose of requiring Alabama to provide its citizens with constitutionally guaranteed due process before they may be involuntarily committed or recommitted to a mental health facility. That purpose has now been accomplished to the extent of the constitutional issues raised in this case. Our nation's concept of federalism does not contemplate a perpetual role of a federal court as overseer of state functions.

For the reasons discussed above, the court finds that there is no longer any legitimate basis for continuing to give the 1974 injunction prospective effect. The State of Alabama has enacted a statute amending its commitment and recommitment procedures, and the Plaintiffs concede that this brings Alabama statutory law into conformity with the requirements of the injunction. The passage of this statute constitutes a change in circumstances which fulfills the ultimate objective of the 1974 injunction and therefore warrants the termination of the injunction. The injunction is no longer needed; its requirements are now included in the requirements of state law. Therefore, the court finds that the injunction is due to be VACATED and this case DISMISSED, as there is no remaining case or controversy between the parties.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED, ADJUDGED, and DECREED that the injunction entered by this court on December 14, 1974, is DISSOLVED and VACATED, and this action is DISMISSED.

### APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

Jean P. Lynch, individually and on behalf of all persons similarly situated, Plaintiffs,

JESSE M. HUGHES; et al., Intervening Plaintiffs,

v.

William J. Baxley, individually and as Attorney General of the State of Alabama; et al., Defendants.

CIVIL ACTION NO. 74–89–N

### ORDER

In view of the substantial difficulties that all parties continue to experience in interpreting the requirement that a person proposed to be committed or recommitted to the custody of the Department of Mental Health or the Veterans' Administration manifest some danger to himself or others by a "recent overt act," it is appropriate for the Court at this time to clarify what is meant by said requirement in the commitment and recommitment contexts.

In the case of a person at liberty in the community who is proposed to be involuntarily committed, it is imperative that the need for his confinement be demonstrated by clear and convincing evidence of the real and present danger which he poses to himself or to others. Moreover, it is essential that the evidence which forms the basis of the decision to deprive a citizen of his liberty be more concrete and more reliable than a mere expectancy or probability that the person will engage in dangerous behavior in the future. As the Court indicated in the opinion entered in this cause on December 14, 1974, "To

confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or another."

In the case of a person presently confined and receiving treatment for his mental illness, however, his need to be recommitted to the custody of the Department of Mental Health or the Veterans' Administration may not be readily demonstrable by the same type of "recent overt act" which is constitutionally prerequisite to the commitment of an individual at liberty. In such cases, the need for recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary for the patient's health and well-being. The fact of present confinement is not alone sufficient to justify continued confinement; neither is the testimony of staff personnel predicting adverse consequences of release from confinement if that testimony is based wholly on opinion and is unsupported by any facts or occurrences which would lead a reasonable man to concur in the recommendation for recommitment. In order for a patient to be recommitted to the custody of the Department of Mental Health or the Veterans' Administration, the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued confinement is necessary.

Done, this the 6th day of May, 1975.