Roderick Lawrence Webster appeals from the judgment of the Mobile County Probate Court renewing his involuntary inpatient commitment to the Alabama Department of Mental Health, Searcy State Hospital (the Hospital). We affirm.
On October 9, 1996, the designee of the director of the Hospital filed a petition requesting that a commitment order originally entered by the Tuscaloosa County Probate Court be renewed, alleging that Webster is mentally ill, with a current diagnosis of "bipolar schizoaffective disorder," a condition requiring medication. The petition further alleges that Webster is noncompliant with medication, does not accept his mental illness, and is verbally aggressive, "assaultive" toward others, and irritable. The petition also asserts that less restrictive conditions of treatment are not appropriate for Webster and that his active psychosis will prevent him from being able to function within society without harm to others. The probate court set the case for a hearing and appointed a guardian ad litem for Webster.
The probate court received ore tenus evidence at the renewal hearing. Webster and Dr. Shelby Bruton, who is Webster's treating psychiatrist, testified at the hearing. After the hearing, the probate court entered a judgment, which in pertinent part reads as follows:
 "The Court finds from clear and convincing evidence adduced in open hearing that the respondent [Webster] is mentally ill; that as a result of the mental illness, the *Page 1228 
respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; that the respondent is unable to make a rational informed decision as to whether treatment for the mental illness would be desirable; that the respondent poses a real and present threat of substantial harm to himself and others; that said respondent has committed an overt act for which a factual basis for continued confinement has been shown and is supported by clear and convincing evidence; that there is treatment available for the mental illness diagnosed; that inpatient commitment to the Alabama Department of Mental Health or its designated facility is the least restrictive alternative necessary and available for the treatment of the person's mental illness; and accordingly, said petition is due to be granted. . . ."
The probate court ordered Webster committed to the Hospital for not more than nine months, subject to further renewal upon proper petition and proceedings, and taxed costs to the State of Alabama General Fund.
Webster appeals. We have jurisdiction pursuant to Ala. Code 1975, § 22-52-15.
Webster's sole argument on appeal is that the probate court erred in finding that he had "committed an overt act" for which continued confinement was warranted. As authority for the proposition that the petitioner is required to prove an "overt act," Webster cites Lynch v. Baxley, 386 F. Supp. 378 (M.D.Ala. 1974) (three-judge court), reversed on other grounds,651 F.2d 387 (5th Cir. 1981). See also Wyatt v. King, 773 F. Supp. 1508
(M.D.Ala. 1991). However, we note that the federal injunction entered in the Lynch/Wyatt litigation has recently been dissolved. Lynch v. Sessions, 942 F. Supp. 1419 (M.D.Ala. 1996) (three-judge court).
At the time we decided Thomas v. State Dep't of Mental Health Mental Retardation, 620 So.2d 18 (Ala.Civ.App. 1992), the federal court that had entered the injunction in Lynch had "declined to specify the precise extent to which the Alabama statute, as amended, comports with the due process safeguards previously mandated." 620 So.2d at 20. However, even at that time, the state "[had] a motion before the federal court to vacate or modify the Lynch injunction so that state mental health officials might in the future proceed solely under state law." Id. The federal court's most recent opinion makes it clear that the enactment of Ala. Code 1975, § 22-52-1.1 et seq., has mooted the requirements of Lynch: "The State of Alabama has enacted a statute amending its commitment and recommitment procedures, and the plaintiffs concede that this brings Alabama statutory law into conformity with the requirements of the injunction." Lynch v. Sessions, 942 F. Supp. at 1427. Accordingly, we conclude that original commitment and renewal proceedings in Alabama courts need only fulfill the requirements of Alabama law appearing in Ala. Code 1975, §22-52-1.1 et seq.
Because Webster's sole argument on appeal is that the probate court erred in finding an "overt act" warranting renewal of his commitment order, we note that the injunction in Lynch imposing this requirement has been dissolved and that there is no statelaw requirement that a petitioner in a renewal proceeding prove an "overt act." Indeed, Lynch v. Sessions makes it clear that even while the federal injunction was in force, proof of an overt act was not required as a matter of federal constitutional law in recommitment proceedings.[1] Instead, all that Lynch required in recommitment proceedings was "evidence which provides some factual basis to support the hospital staff's *Page 1229 
recommendation that recommitment is necessary." Lynch v.Sessions, 942 F. Supp. at 1422.
This reduced burden has been carried forward into Alabama law. The burden of proof in hearings on petitions for renewal of inpatient commitment orders is that set forth in Ala. Code 1975, § 22-52-10.6(k), which is "to prove, based on clear and convincing evidence, the criteria as prescribed in thisarticle" (emphasis added). We interpret this to be a reference to the necessary criteria for entry of an order initially committing a party to inpatient treatment, as set forth in Ala. Code 1975, § 22-52-10.4(a):
 "(i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent poses a real and present threat of substantial harm to self and/or others; (iii) the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iv) the respondent is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable."
(Emphasis added.) As a result, any finding by the probate court concerning an "overt act" by Webster was not necessary to the probate court's judgment regarding renewal. Any error in finding an "overt act" was therefore harmless. See Rule 45, Ala.R.App.P.
In this case, the probate court made those factual findings necessary under § 22-52-10.4(a) to support its judgment renewing Webster's commitment. It found that Webster is mentally ill; that as a result of the mental illness, he will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; that he is unable to make a rational informed decision as to whether treatment for the mental illness would be desirable; and that he poses a real and present threat of substantial harm to himself and others. Although Webster does not challenge any specific findings or conclusions of the probate court other than its finding of an "overt act," we review the legal sufficiency of the evidence before the probate court because of the unquestioned liberty interest involved. Our standard of review is settled: "We take note of the presumption of correctness that accompanies a trial court's findings of fact in an ore tenus proceeding; the trial court's judgment will not be reversed on appeal unless it is shown to be plainly and palpably wrong." Thomas, 620 So.2d at 21.
Dr. Shelby Bruton testified that Webster suffers from schizoaffective disorder, which he said causes distorted thinking, delusions, hallucinations, agitation, hostility, and threats; Webster had been admitted to state mental facilities on eight occasions. Dr. Bruton also opined that without Webster's medication, consisting of biweekly doses of an antipsychotic agent and two daily doses of a mood stabilizing agent (Haldol Decanote IM and Depakene, respectively), and his treatment, consisting of group therapy, activities therapy, and individual counseling, Webster would deteriorate and would suffer a return of the behavior that had warranted his original admission. Webster, Dr. Bruton testified, is actively psychotic and is unable to make decisions in his best interest at this point. Dr. Bruton also testified that Webster had displayed hostility before he was admitted to the Hospital and that he was continuing to do so: three weeks before his hearing, Webster had cursed at a mental health worker, had expressed hostility toward minority patients, and had hit another patient at the Hospital for no apparent reason. Webster also showed chemical signs of having failed or refused to take his prescribed daily medication during the same period. We conclude that there was evidence before the probate court supporting each of the findings necessary for renewal of commitment under Alabama law. Accordingly, the probate court's judgment in this renewal proceeding was not plainly or palpably wrong.
We affirm the judgment of the probate court.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] "On May 8, 1975, the three-judge panel issued an order clarifying the injunction. With respect to recommitment proceedings, the court explained that 'the need for recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary. . . .' At the recent oral argument on the Defendants' Motion to Vacate, plaintiffs' counsel took the position that this order effectively deleted the injunction's absolute requirement of a finding of a recent overt act as a predicate for commitment or recommitment, thus mooting any possible issue as to whether dueprocess requires such a finding. The counsel for the Defendants agreed." Lynch v. Sessions, 942 F. Supp. at 1422 (emphasis added). *Page 1230