On December 12, 2000, William F. Kringel, Ph.D., as the designee of the director of Searcy Hospital, petitioned the Probate Court of Mobile County to renew the inpatient commitment of Stephen Ryan. After a hearing on the matter on December 20, 2000, the probate court ordered that Ryan's commitment be renewed for a period not exceeding six months. Ryan appeals this decision.
Recommitment proceedings are governed by the procedures outlined in Ala. Code 1975, § 22-52-1 et seq. See Webster v.Bartlett, 709 So.2d 1226 (Ala.Civ.App. 1997) (holding that original commitment and renewal proceedings are governed solely by Alabama statutory law). To properly renew Ryan's commitment, the probate court had to find clear and convincing evidence of each of the following elements: (1) that Ryan "is mentally ill"; (2) that Ryan "poses a real and present threat of substantial harm to self and/or others"; (3) that Ryan "will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently"; and (4) that Ryan "is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable." Ala. Code 1975, § 22-52-10.4(a).
Ryan's treating psychiatrist, Dr. Eusebio Respicio, testified at the hearing. He explained that Ryan was a paranoid schizophrenic and that he suffered from depression, prominent delusions, and auditory hallucinations. In addition, Dr. Respicio testified that Ryan believed that a group of people are conspiring against him to benefit financially from ideas that Ryan hoped to patent. According to Dr. Respicio, Ryan had allegedly threatened this group of people, which included some church members and members of his own family. Dr. Respicio explained that "this combination of persecutory and grandiose [delusions] and anger may predispose the patient to violence."
When he was questioned about whether Ryan posed a significant threat of harm to himself or to others, Dr. Respicio testified as follows:
 "Q: Does he pose a significant threat of harm to himself or to others at this time?
 "A: If he goes back outside the threat is there. But if he stays with us, no threat.
"Q: What is the threat if he goes outside?
 "A: Well, he will be what you call a psychotic and believe that we are conspiring against him. That's what the theme will be of what he's talking about.
"Q: So he will continue to have those delusions?
"A: Yes, ma'am.
 "Q: Would that cause him to be dangerous to himself or to others?
"A: To others.
"Q: How will that be?
 "A: Well, if he thinks these are conspiring people he might hit anybody or call and threaten anybody. That's a possibility.
 "Q: Okay. It's a possibility. Has he done this in the past, hit anyone? *Page 1084 
 "A: We don't have any record at this moment, but in the past, I don't know."
(Emphasis added.)
On cross-examination, conducted by Ryan himself, Dr. Respicio testified as follows:
 "Q: Okay, did you testify that you believe that I might be a threat to the community or some religious group or I had threatened my family?
"A: Yes, sir.
". . . .
 "Q: . . . During my seven months of incarceration in the mental health system I have been up here at Searcy for about four months waiting for the appeal process of my initial commitment. Have there been any acts that I have been involved in that represented a threat to anybody in any way?
"A: No.
 "Q: Have I — is there any evidence in your records, legal information, or whatever where I have ever been charged with a crime such as assault or threatening anyone in any way?
"A: No.
 "Q: Have I been keeping reasonable hours, like functioning, getting up in the morning?
"A: Yes.
 "Q: Do you believe that I am right now functioning in a coherent, rational way and a calm, interactive way that would be non-threatening?"
"A: Yes."
Dr. Respicio explained that Ryan refused to take the medication prescribed for his illness and that he continued to be mentally ill because of that refusal. However, as is reflected by portions of the testimony above, Dr. Respicio believed that Ryan could meet his own basic needs and that the manifestation of Ryan's mental illness was not entirely pervasive, that is, that Ryan could be calm and rational in situations unrelated to his paranoid delusions. In fact, Dr. Respicio testified that Ryan "really can keep it to himself. He doesn't show evidence like [acting out or committing overt acts of violence]."
After considering the testimony presented at the recommitment hearing, we conclude that the hospital failed to prove that Ryan "poses a real and present threat of substantial harm to self and/or others." §22-52-10.4(a). Dr. Respicio testified that Ryan "might" hit someone or threaten someone — he described such an occurrence as a "possibility." He admitted that Ryan had not acted in a threatening manner or even attempted to commit violence during his incarceration. Such testimony does not rise to the level necessary to deprive a person of his liberty. "Mights" and "possibilities" are not enough to convince us that Ryan "poses a real and present threat of substantial harm to . . . others." Accordingly, the judgment of the probate court is reversed.
REVERSED AND REMANDED.
Yates, P.J., and Pittman, J., concur.
Thompson and Murdock, JJ., concur in the result.