In November 2006, Grace Williams, the mother of Damien D. Collins, petitioned to have Collins involuntarily committed. Collins was confined for evaluation for approximately six days, after which the probate court held a hearing on his commitment. After hearing the testimony of Dr. Douglas Ewing, the attending psychiatrist at BayPointe Adult Evaluation Unit, the facility at which the six-day evaluation of Collins occurred, the probate court ordered that Collins be committed to inpatient treatment at Searcy Hospital for a period not to exceed 150 days. Collins appeals.
Commitment proceedings are governed by the procedures outlined in Ala. Code 1975, § 22-52-1 et seq. See Webster v.Bartlett, 709 So.2d 1226 *Page 92 
(Ala.Civ.App. 1997) (holding that both original commitment proceedings and recommitment proceedings are governed solely by Alabama statutory law). To have properly committed Collins to inpatient treatment, the probate court must have found clear and convincing evidence of each of the following elements: (1) that Collins "is mentally ill"; (2) that Collins "poses a real and present threat of substantial harm to self and/or others"; (3) that Collins "will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently"; and (4) that Collins "is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable." Ala. Code 1975, § 22-52-10.4(a).
The testimony of Dr. Ewing established that Collins had been confined for evaluation after an incident in October 2006 in which he brandished a weapon during an argument with his brother. According to Dr. Ewing, when Collins was first placed under observation, he admitted that he regularly used marijuana. Because marijuana can result in behavior patterns similar to those that resulted in Collins's confinement, i.e., paranoia and other signs of psychosis, Collins was not placed on anti-psychotic medication despite the fact that Dr. Ewing and others on the observation team concluded that Collins suffered from psychosis. As Dr. Ewing explained, it was important to see if the marijuana was causing Collins's symptoms, and because the medication would resolve the symptoms regardless of their cause, the team decided not to medicate Collins during the evaluation. Had the symptoms resolved, the team could have concluded that marijuana was causing Collins's paranoid behavior.
Dr. Ewing commented that, although the observation team was not ready to make the diagnosis, it was possible that Collins also suffered from schizophreni-form disorder; he noted that Collins had a family member who was a diagnosed schizophrenic. Dr. Ewing noted that Collins also exhibited some antisocial personality traits. According to Dr. Ewing, Collins required "further evaluation to ascertain the exact nature of [his] psychotic symptoms, [and] whether, in fact, this does represent [a] first psychotic episode."
When asked if Collins posed a danger to himself or to others, Dr. Ewing stated that it was a "distinct possibility." He noted that, although Collins had been compliant and cooperative during the evaluation procedure, the event precipitating the evaluation and the filing of the commitment petition involved Collins's brandishing a gun during an argument with his brother. Dr. Ewing commented that Collins showed very little insight regarding, and was glib and dismissive about, the events leading to the filing of the commitment petition; he commented that Collins had even dismissed the incident by using humor. Dr. Ewing admitted that while under observation Collins had not exhibited any overt delusional thoughts. However, Dr. Ewing explained that it was normal for a person suffering from psychosis and paranoia to be guarded and wary and said that such signs — the wariness, the guarded behavior, and the suspiciousness exhibited by Collins — were typical "soft" signs of paranoia. Dr. Ewing noted Collins's lack of insight regarding his behavior and indicated that Collins would not be able to make informed and rational decisions about his need for mental-health treatment. Dr. Ewing testified that Collins, if left untreated, would continue to suffer from mental illness and would experience a deterioration of his ability to function independently. *Page 93 
The petition for involuntary commitment also indicates that Collins suffers from paranoia. According to the allegations in the petition, before Collins brandished the weapon, he told his mother that "they are watching him" and was walking around the house hitting the wall. In addition, the petition alleged that in the months before the October gun-brandishing incident, Collins believed that the telephone lines were tapped, that the computer was bugged, and that there was a camera on a pole in the backyard watching the house. The petition also noted that Collins required the window blinds to be turned a certain way out of fear of being watched.
Collins relies on this court's opinion in Ryan v.Bartlett, 802 So.2d 1082 (Ala.Civ.App. 2001), in which we reversed the recommitment to inpatient treatment of Stephen Ryan because of the lack of proof that Ryan was a danger to himself or to others. Ryan's treating psychologist, Dr. Eusebio Respicio, had testified that it was "a possibility" that Ryan, if he thought certain people were conspiring against him, could "call and threaten" or might attempt to "hit" those people.Ryan, 802 So.2d at 1083. However, Dr. Respicio testified that Ryan had not acted in a violent manner or made any threats during his four-month commitment to Searcy Hospital; Dr. Respicio also testified that he had no record of Ryan having hit anyone in the past or that Ryan had ever been criminally charged with assaulting or threatening anyone. Id. at 1084. Dr. Respicio further testified that Ryan could function in a coherent and calm manner in situations unrelated to his paranoid delusions and that "Ryan `really can keep it to himself. He doesn't show evidence like [acting out or committing overt acts of violence].'" Id. Thus, we concluded that Dr. Respicio's testimony that Ryan "might," under some circumstances, threaten other persons when there was no evidence indicating that he had ever acted in a violent manner was insufficient to establish that Ryan posed a substantial danger to himself or to others, and, therefore, we held that the hospital had failed to prove that his recommitment was necessary as required by the statute. Id.
We agree with Williams that Ryan is distinguishable from the present case. In Ryan, Ryan had been in treatment at Searcy Hospital for approximately four months, during which he had not exhibited any violent behavior.Id. Although violent behavior or "threats" were possible reactions that Ryan could have once he were released, the hospital had no evidence indicating that Ryan had ever harmed anyone and could not rely on mere possibilities to restrain Ryan of his liberty. Id.
Collins, however, was confined for evaluation after an incident during which he brandished a weapon. Although Collins did not discharge the weapon, his use of it during an argument certainly indicated that he was at least capable of threatening violence in a volatile situation. Although Collins did not display any aggressive behavior during the six-day observation period, he had recently engaged in behavior that clearly "pose[d] a real and present threat of substantial harm" to himself or to others. § 22-52-10.4(a). Thus, in light of Collins's very recent actions, we cannot agree that the mere fact that he had not displayed violence during his observation period is the equivalent to Ryan's behaving rationally and without violence for a four-month period and having no history of assault. In addition, Dr. Ewing indicated that the risk of substantial harm to Collins and to others was not just possible but, instead, was "a distinct possibility" in light of Collins's recent behavior of brandishing a weapon. *Page 94 
We conclude, therefore, that Williams presented clear and convincing evidence that Collins suffers from a mental illness; that he is unable to make an informed and rational decision concerning his need for treatment of that mental illness; that, without treatment, Collins would suffer continued deterioration as a result of his mental illness; and that, because of his mental illness, Collins poses a real and present threat of substantial danger to himself and to others. We affirm the probate court's commitment of Collins to Searcy Hospital for inpatient treatment for a period not to exceed 150 days.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.