Gloria HODGE, Lorenza Chavez and Elizabeth Duberry, Plaintiffs–Appellants,

v.

The DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, HOUSING DIVISION, DADE COUNTY, FLORIDA, etc., et al., Defendants–Appellees.

No. 87–5745.

United States Court of Appeals, Eleventh Circuit.

Jan. 4, 1989.

Peter H. Barber, Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiffs-appellants.

Thomas H. Robertson, Asst. County Atty., Dade County Attorney's Office, Miami, Fla., for defendants-appellees.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

In this appeal we are called upon to decide whether the district court abused its discretion in dissolving a permanent injunction against a public housing agency. The United States District Court for the Southern District of Florida held that subsequent changes in federal law and the local agency's regulations concerning grievance proceedings for tenants of public housing now adequately serve the purposes contemplated by the injunction and thus constitute a change in circumstances sufficient to justify its dissolution. For reasons stated below, we vacate the district court's order and remand for further proceedings.

This class action began in June, 1968. The original plaintiffs, tenants of public housing projects operated by the housing division of the Dade County Department of Housing and Urban Development (the "County"), challenged, on procedural due process grounds, the constitutionality of the County's method of collecting sums alleged to be owed by public housing tenants as a result of loss or destruction of the County's property. In 1970 the parties entered into a consent order in the district court which required the County to adopt regulations, set forth in the order, detailing the procedures to be followed when assessing charges against tenants. The order, which expressly applied to all present and future public housing tenants, guaranteed that any attempt at imposition of liability for loss, damage or destruction of the County's property would be accompanied by a comprehensive notice including the nature of the loss, the proposed remedial action and the cost of any needed repairs or replacement, as well as a statement advising the tenant of the availability of a hearing. The decree also directed the County to provide its tenants a fair hearing to resolve liability disputes raised by tenants.

In the mid–1970s, the United States Department of Housing and Urban Development ("HUD") promulgated regulations which obligated public housing agencies ("PHAs") such as the County to adopt a regulation affording each tenant an opportunity for a hearing on a grievance[1] "in accordance with the requirements, standards, and criteria" published by HUD. 24 C.F.R. § 966.52 (1988). Pursuant to HUD's guidelines, the rules adopted by the PHAs must be made part of all the tenants' leases. Id. To initiate a grievance proceeding, the tenant must present his complaint either to the PHA or the project office and participate in an informal discussion of the dispute. Id. at § 966.54. If the tenant remains dissatisfied, he or she may then request a hearing. Id. The federal regulations further provide that "[s]chedules of special charges for services, repairs and utilities and rules and regulations which are required to be incorporated in the lease by reference shall be publicly posted in a conspicuous manner in the Project Office and shall be furnished to applicants and tenants on request." Id. at § 966.5. However, HUD's regulations do not require PHAs to inform tenants, contemporaneously with an assessment, of the availability of

---

1. A "grievance" is "any dispute which a tenant may have with respect to PHA action or failure to act in accordance with the individual tenant's lease or PHA regulations which adversely affect the individual tenant's rights, duties, welfare or status." 24 C.F.R. § 966.53(a) (1988).

a hearing. In 1983 Congress enacted a statute directing HUD, by regulation, to require PHAs to establish administrative grievance procedures under which tenants shall be notified of the specific grounds of any proposed adverse PHA action and furnished an opportunity for a fair hearing to contest such action. 42 U.S.C. § 1437d(k) (Supp. IV 1987).

A motion for contempt filed by two tenants in 1981 alleged that the County was not complying with the consent decree. The parties settled that dispute by signing, in 1982, an amended consent order which mandated updated notice and hearing requirements, incorporating the County's grievance procedure provisions previously adopted to comply with the federal regulations.[2]

The latest chapter in this litigation began in 1987 with a contempt motion filed by Lorenza Chavez and Elizabeth Dewberry (the "Tenants") charging the County with widespread noncompliance with the 1982 amended consent order. The County responded by filing a motion to dismiss. At oral argument on the motions, the County argued that federal regulations and statutes adopted after 1968 require the County to accomplish the purposes contemplated by the permanent injunction. The district court agreed that the intervening changes in federal law constituted a sufficient change in circumstances to justify modification of the consent decree. Consequently, the district court denied the contempt motion and dismissed the proceedings, without prejudice to the Tenants, terminating the injunction. The Tenants appeal.

The Tenants attack the district court's order on two grounds. First, they argue that the case was not in a proper procedural posture for dismissal because the County had not formally sought relief from the judgment based on changed circumstances, and the district court failed to hold an evidentiary hearing to determine whether, in fact, conditions had changed sufficiently to warrant relief. Second, the Tenants contend that the district court overlooked the applicable substantive law, failing to apply the stringent standard urged by Tenants in evaluating the merits of the changed circumstances controversy.

We agree with the Tenants "that a district court must hold an evidentiary hearing before modifying a consent decree in such a manner as to remove requirements previously imposed." *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 976, 981 (3d Cir.), *cert. denied,* 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982). Therefore, the district court's order must be vacated and the case remanded to determine whether changed conditions justify modification. The more difficult question concerns the appropriate substantive standard to be applied in making that determination.

The parties do not dispute the court's authority to dissolve its decree. Inherent in the jurisdiction of a court of equity is the power "to modify an injunction in adaptation to changed conditions, though it was entered by consent." *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, 1005 (1932). It matters not whether, as here, the court by the terms of its order reserves the power to

---

**2.** The amended consent order instructs the County to include in the notice statement the following message: IF YOU THINK THAT THE DAMAGE OR LOSS DESCRIBED ABOVE IS NOT YOUR FAULT, OR NOT THE FAULT OF A MEMBER OF YOUR FAMILY OR A PERSON VISITING YOU OR YOUR FAMILY OR THAT YOU ARE BEING CHARGED TOO MUCH FOR IT, THEN:

1. GO TO THE MANAGER OF YOUR PROJECT AND TELL HIM YOUR COMPLAINT.

2. IF YOU ARE NOT SATISFIED WITH THE MANAGER'S RESPONSE, YOU SHOULD FILL IN THE WRITTEN GRIEVANCE FORM AVAILABLE IN THE MANAGER'S OFFICE. HUD WILL RESPOND IN WRITING TO YOU. IF YOU ARE NOT SATISFIED WITH HUD'S WRITTEN RESPONSE TO YOUR GRIEVANCE, YOU MAY ASK FOR A HEARING BY SENDING A WRITTEN REQUEST TO HUD WITHIN 10 DAYS OF RECEIVING HUD'S WRITTEN ANSWER TO YOUR GRIEVANCE.

YOU MAY HAVE AN ATTORNEY AND/OR FRIEND OR RELATIVE REPRESENT YOU AT THE HEARING.

This statement and a Spanish translation of it appear in both the County's "General Maintenance And Repair Order" and its "Emergency Maintenance And Repair Order."

revoke or modify it.[3] *Id.* Thus, "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* Congress has approved a codification of this judicial formulation in Rule 60(b)(5), F.R.Civ.P.[4] See 11 Wright & Miller, Federal Practice and Procedure: Civil § 2961, at 599 (1973).

Before exercising its power to modify, a court must be convinced by the party seeking relief that existing conditions differ so substantially from those which precipitated the decree as to warrant judicial adjustment. The parties here sharply dispute the weight of the County's burden in demonstrating a change in circumstances adequate to justify modification of the consent decree. The Tenants, relying on *Swift,* insist that the County's responsibility is a heavy one. The rigorous *Swift* standard derives from Justice Cardozo's statement that "a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." 286 U.S. at 114–15, 52 S.Ct. at 462, 76 L.Ed. at 1006. This standard requires an evaluation of both the continuing need for the injunction as well as the hardship, if any, suffered by the enjoined party:

> The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change [the decree].

*Id.* at 119, 52 S.Ct. at 464, 76 L.Ed. at 1008. According to the Tenants, the County

failed to pass the *Swift* "instrument of wrong" test.

Since *Swift,* however, the Court has placed less emphasis on the deleterious effects of a decree on the defendant and more on the continuing need for the injunction. See Wright & Miller, *supra,* at 602. As the Court pointed out in *United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562, 566 (1968), "*Swift* teaches that a decree ... may *not* be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree ... have not been fully achieved." Disregarding the confusing double negative, this restatement of the holding in *Swift* declared that a defendant can successfully seek modification when an injunction's purposes have been realized. After *United Shoe,* the defendant need not be a victim of oppression before a court can grant relief from its earlier judgment. As this court stated, "the job of a district court after *Swift* and *United Shoe* is to look at the particular facts and circumstances of the case to determine whether the modification satisfies the underlying purpose of the decree." *Williams v. Butz,* 843 F.2d 1335, 1338 (11th Cir.) *reh. denied,* 854 F.2d 1326 (1988).

In this circuit, *Swift* plays a distinguished but diminished role. We have limited the decision in a manner which lessens its influence considerably. In *Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984), this court construed a statement in Justice Cardozo's opinion which drew a "distinction ... between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Swift,* 286 U.S. at 114, 52 S.Ct. at 462, 76 L.Ed. at 1005–06, cited by *New-*

---

3. In paragraph 4 of the amended consent order the district court "specifically retain[ed] jurisdiction of the cause to enter such further and additional relief as is just, equitable and necessary for the enforcement of the Order."

4. Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) ... it is no longer equitable that the judgment should have prospective application."

*man,* 740 F.2d at 1520. The court concluded that the Supreme Court had characterized the injunction at issue in *Swift* as one of the former variety, requiring the stringent test. "Where, however, a consent decree involves the supervision of changing conduct or conditions and is therefore provisional, modification may be more freely granted." *Newman,* 740 F.2d at 1520; *accord, Nelson v. Collins,* 659 F.2d 420, 423–24 (4th Cir.1981) (*en banc*). This reading of *Swift* requires elaboration, however. In the pertinent passage, Justice Cardozo failed to explain precisely the import of the distinction drawn. The resulting ambiguity raises the question whether the distinction to which Justice Cardozo referred is between two types of decrees which are subject to modification, or rather between those decrees which may be modified and those decrees which may not. Under the first interpretation, the one preferred by the courts in *Nelson* and *Newman,* the distinction is significant because it determines whether the stringent standard announced by the Court in *Swift* is to be applied, or whether an unspecified, less rigorous test is appropriate. Contrast that with the second interpretation, an alternative which permits only one test—the strict one. Under that reading, the distinction is not relevant to the selection of a test. Rather, it determines whether the court has power to modify a particular decree. All decrees susceptible to changing conditions are, under this construction, subject to the same tough test. The former Fifth Circuit Court of Appeals expressed this latter view in *Cook v. Birmingham News,* 618 F.2d 1149, 1152 (5th Cir.1980). *See also, Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1139 (D.C.Cir.1988). Because the language under consideration appears in a paragraph concerned with the court's power to modify (as opposed to the showing needed to justify the court's exer-

cise of that power, a subject dealt with in succeeding paragraphs), the first reading, while plausible, is less persuasive than the second.

The Fifth Circuit Court of Appeals avoided the largely academic discussion speculating as to what exactly Justice Cardozo meant and harmonized *Newman*—which considered court orders requiring the release of prisoners from overcrowded prison facilities—and *Nelson* as decisions consistent with several others announcing "a less demanding standard for modification of consent decrees ... within the institutional reform arena." *Ruiz v. Lynaugh,* 811 F.2d 856, 861 (5th Cir.1987) (citing also *New York State Association for Retarded Children, Inc. v. Carey,* 706 F.2d 956, 970 (2d Cir.), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); *United States v. City of Chicago,* 663 F.2d 1354, 1359–60 (7th Cir.1981) (*en banc*); *Philadelphia Welfare Rights Organization v. Shapp,* 602 F.2d 1114, 1120–21 (3d Cir.1979), *cert. denied,* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980); and *Benjamin v. Malcolm,* 564 F.Supp. 668, 686 (S.D.N.Y.1983)). In *Carey,* the Second Circuit declared, "It is well recognized that in institutional reform litigation ... judicially-imposed remedies must be open to adaptation when unforeseen obstacles present themselves, to improvement when a better understanding of the problem emerges, and to accommodation of a wider constellation of interests than is represented in the adversarial setting of the courtroom." *Carey,* 706 F.2d at 969. Thus, where a decree is the product of institutional reform an application for the modification of such decree "should ... be viewed with generosity," *id.* at 971, and granted "with a rather free hand." *Id.* at 970.[5] The retreat from *Swift* in *Nelson* and *Newman* probably is better explained by the institutional reform rationale than

---

**5.** From the institutional reform cases the Fifth Circuit distilled the elements of a more flexible standard, which in *Ruiz* it did not have occasion to expressly adopt, applied by courts in such circumstances:

> If the defendant (1) can establish some change in circumstances has occurred from the time the decree was negotiated and ap-

proved; (2) convince the court that it has attempted to comply with the decree in good faith; and (3) asks for a modification that does not frustrate the original and overall purpose(s) of the decree, then the court may grant modification.

*Ruiz,* 811 F.2d at 861 n. 8.

by a critical analysis of Justice Cardozo's prose. In any event, *Newman* remains the law of this circuit.

■ The County believes that the injunction here is of the provisional sort, and that, therefore, under *Newman* it did not need to make the showing required by *Swift*. We agree. The injunction here is a continuing decree intended to effect institutional reform. By its terms, the order requires ongoing court supervision, and therefore it is provisional. Thus, *Newman*, and not *Swift*, controls, and modification may be granted more freely.

This is not to say that relief is available at the County's pleasure. Certainly the district court must exercise judicious discretion in deciding whether to modify its earlier decree. But although "there must be wide discretion in the District Court," *System Federation No. 91 v. Wright*, 364 U.S. 642, 648, 81 S.Ct. 368, 371, 5 L.Ed.2d 349, 353 (1961), judicial discretion is bounded, and we believe our decision in *Butz, supra*, offers guidance in locating the limits of discretion appropriate in the instant case.

In *Butz*, the Farmers Home Administration ("FmHA") appealed the district court's denial of its motion to modify a consent decree which required the federal agency to use only judicial proceedings to foreclose mortgages on homes purchased under a federal loan program. *Butz*, 843 F.2d at 1336. The FmHA argued that new federal statutes and regulations had cured the due process default which had given rise to the consent decree, and it sought to alter the order to allow it to conduct foreclosure proceedings pursuant to the regulations. Unlike the consent decrees, the regulations permitted nonjudicial foreclosure proceedings. The district court refused to modify the injunction, holding that "the FmHA neither submitted evidence that the decree violated constitutional, statutory or decisional law, which would render it invalid, nor showed 'the kind of extreme, unexpected oppression and hardship which would justify modification of the Court's decree.'" *Id.* On appeal, this court, after reviewing *Swift* and *United Shoe*, vacated

and remanded, concluding that the district court had applied the wrong legal principles.

Rather than focusing on the hardship to the defendant, the court wrote in *Butz*, the district court must discern the underlying purpose of the decree and decide whether modification would be consistent with that purpose. *Id.* at 1338. The objective of the decree in *Butz* was to secure for borrowers under the federal program procedural due process in foreclosure proceedings. Therefore, if the decree were vacated, the new federal laws would have to guarantee that the FmHA comply with procedural due process, lest the decree's goal be abandoned. The court did not question that a change in the law which obligated the enjoined party to act in a manner not contrary to the command of the court order constituted a proper basis for modification:

> A change in relevant statutory law—such as in this case where Congress required that the FmHA ensure by regulation that due process rights are afforded to borrowers and regulations are promulgated in compliance with that mandate—is a fully adequate basis upon which modification to a consent decree may be based.

*Id.*

The court concluded by studying the new federal statute, which required the FmHA to promulgate regulations establishing an administrative appeals procedure designed to correct due process deficiencies. It found that the congressional enactment did "not conflict with the underlying purpose of the consent decree." *Id.* at 1339. However, the court reasoned that the decree conflicted with the federal law "by depriving the FmHA of a choice that Congress intended it should be able to exercise." *Id.* Thus, the court remanded to allow the district court to determine whether the FmHA had complied with the statute and promulgated regulations comporting with constitutional due process. If it answered the question in the affirmative, then the district court was instructed to vacate or modify the injunction so as to permit the

FmHA to employ nonjudicial foreclosure proceedings.

This case is similar to *Butz.* Here we are faced with a continuing injunction much like the one in that case with respect to purpose. The underlying reason for the present decree is to force the County to afford public housing tenants procedural due process in the collection of maintenance charges. As in *Butz*, a subsequent congressional enactment presently requires the appropriate federal agency (HUD) to promulgate regulations directing local PHAs such as the County to adopt administrative grievance procedures including the basic elements of due process—notice and opportunity for a fair hearing. HUD has complied, promulgating regulations setting forth the requirements, standards and criteria with which public housing authorities must comply when fashioning their own regulations governing grievance procedures. The County in turn has obeyed the federal regulatory scheme, adopting the requisite rules. In addition, the County, pursuant to the consent decree, has adopted specific notice provisions, requirements not explicitly provided for in the regulations.

Applying *Butz,* we first note that the federal regulatory scheme is not contrary to the underlying purpose of the consent decree. Both are intended to ensure that procedural due process will not be ignored. However, the decree conflicts with the federal laws, because the consent order mandates special notice requirements not imposed by Congress or HUD. On remand, the district court should first determine whether compliance with the federal laws necessarily satisfies due process. If so, the court can dissolve the injunction, because in that event the decree merely compels an outcome consistent with the one demanded by the federal statute and regulations. That the County might alter its grievance procedure following dissolution of the injunction is not significant, as long as any regulations adopted by the County conform to the requirements of the federal laws and procedural due process. Congress and HUD have permitted PHAs some discretion in establishing such procedures, and the Tenants cannot insist on additional or unique protection of their rights absent constitutional fault. *Id.* at 1339. See *System Federation No. 91*, 364 U.S. at 648, 81 S.Ct. at 371–72, 5 L.Ed.2d at 354.

If the district court finds that compliance with the federal regulatory scheme would not satisfy due process, a second series of questions will arise, because the County's existing regulations fulfill the demands of due process.[6] Therefore, if the district court determines that the criteria and standards contained in the federal regulations do not meet the minimum requirements of due process, then it should consider whether the County, if relieved of the consent decree's burden, would quickly repeal its current regulations and promulgate new, constitutionally deficient procedural rules. Were it persuaded that the County would not immediately discard its current rules, and in addition were it convinced that the County could reasonably be anticipated to abide by such rules, the district court might then find that the County no longer need be ordered to obey these regulations. *See Tobin v. Alma Mills*, 192 F.2d 133, 136 (4th Cir.1951), *cert. denied*, 343 U.S. 933, 72 S.Ct. 769, 96 L.Ed. 1342 (1952). On the other hand, if the federal regulatory regimen does not protect adequately the procedural due process rights of public housing tenants, then dissolution of the consent decree would be inappropriate provided the district court also were to find either that (1) the County would then implement constitutionally deficient procedures; or (2) the County would then repeatedly violate its existing regulations. Such conduct would result same deprivations which prompted the original suit, necessitating new actions

---

**6.** The constitutionality of the County's existing procedures is not an issue in this case. In the third paragraph of the amended consent order the district court held "that such procedures are in conformity with the requirements of proce-dural due process of law as required by the Fourteenth Amendment to the Constitution of the United States." Neither party challenges this determination.

to remedy individual constitutional violations.

VACATED AND REMANDED.