Roberto TEFEL, et al., Plaintiffs,

v.

Janet RENO, Attorney General of the
United States, et al., Defendants.

No. 97–0805–CIV–KING.

United States District Court,
S.D. Florida.

Feb. 10, 1998.

Ira Kurzban and Elliot H. Scherker, Miami, FL, for Plaintiffs.

Dexter Lee, Asst. U.S. Attorney, Miami, FL, David Bernal, Asst. Director, Office of Immigration Litigation Civil Division, Washington, DC, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISSOLVE INJUNCTION, MOTION TO DISMISS, AND MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendants' Motion to Dissolve Injunction, Motion to Dismiss as Moot as to Certain Class Members, and Motion for Summary Judgment as to the Remaining Class, filed December 22, 1997. Plaintiffs responded on January 6, 1998, and Defendants replied on January 16, 1998.

### I. Factual and Procedural Background

#### A. Events Culminating in the Preliminary Injunction

Just like the statutes that spawned it, this case has a complicated history. Plaintiffs, who represent a class consisting of aliens, primarily Nicaraguans, under the threat of deportation, brought suit in this Court to challenge Defendants' interpretation and retroactive application of section 309(c)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, Div. C, 110 Stat. 3009, 3009–545 to 3009–724. Section 309(c)(5) is one of the statute's transitional rules, which serve to phase in the substantial changes that IIRIRA made to the nation's immigration laws, codified in the Immigration and Nationality Act ("INA").

Section 309(c)(5) governs the timing of applications for suspension of deportation. Prior to IIRIRA, that form of relief required that the applicant establish continuous physical presence in the United States for a period of seven years prior to the filing of her application for suspension. IIRIRA changed the way in which the applicant's continuous physical presence is counted by ending that period when the applicant was issued a notice to appear, instead of when the applicant filed an application for suspension. This is IIRIRA's so-called "stop-time" provision. Section 309(c)(5) applied the stop-time provision's methodology to "notices to appear issued before, on, or after the date of the enactment of this Act [Sept. 30, 1996]." IIRIRA § 309(c)(5), 110 Stat. at 3009–627.

One of the many complexities engendered by IIRIRA, however, was that "notices to appear" were termed "orders to show cause" [1] before IIRIRA was passed. Thus, it was unclear whether IIRIRA's stop-time provision applied to aliens issued orders to show cause prior to September 30, 1996. In *Matter of N–J–B*, Int. Dec. 3309 (B.I.A.1997), the Board of Immigration Appeals ("BIA") decided that the stop-time provision did indeed cover orders to show cause issued prior to IIRIRA's enactment. As a result, many aliens placed in deportation proceedings prior to the passage of IIRIRA found themselves subject to its more stringent requirements. If they had been issued an order to show cause before being continuously present in the United States for more than seven years, then they failed to meet the statutory requirements for suspension. Consequently, their applications, if already filed, were pretermitted.

When they initially filed this lawsuit, Plaintiffs sought to enjoin Defendants from enforcing *N–J–B*'s interpretation of IIRIRA section 309(c)(5), which, if implemented, would have deprived Plaintiffs of a hearing on their applications for suspension of deportation. Among other things, Plaintiffs alleged in their Complaint that this interpretation conflicted with both statutory and constitutional mandates. On May 14, 1997,

---

1. Both of these terms refer to documents issued by the Immigration and Naturalization Service to aliens in order to commence deportation proceedings against them.

this Court denied Defendants' Motion to Dismiss for lack of subject matter jurisdiction, and on June 24, 1997, granted Plaintiffs a preliminary injunction. In so doing, the Court found that Plaintiffs were likely to succeed on their constitutional due process claim. The Court thus enjoined Defendants from "(1) deporting any member of the Plaintiff class, and (2) enforcing *Matter of N–J–B* or otherwise pretermitting applications for suspension of deportation based on the Defendants' policy as expressed in said *Matter of N–J–B*." (Prelim.Inj. at 64.) The Court described the Defendants' policy as "to strip the Plaintiffs and class members of their right to seek suspension of deportation by applying § 309(c)(5) of [IIRIRA] retroactively to bar [claims for suspension of deportation]." (*Id.* at 4.)

### B. Events Subsequent to the Preliminary Injunction

After the Court issued the preliminary injunction, both the executive and legislative branches took actions that bear directly on the issues in this case. First, on July 10, 1997, Attorney General Janet Reno vacated the BIA's decision in *Matter of N–J–B* pending further review. Shortly thereafter, Defendants appealed this Court's preliminary injunction and order denying Defendants' motion to dismiss to the U.S. Court of Appeals for the Eleventh Circuit. In light of the Attorney General's vacatur of *Matter of N–J–B*, Plaintiffs/Appellees filed a motion to dismiss Defendants' appeal as moot. That motion is still pending before the Eleventh Circuit.

Meanwhile, Congress was working on legislation to temper some of IIRIRA's harsher effects. On November 19, 1997, the President signed into law the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub.L. 105–100, tit. II, 111 Stat. 2160, 2193–2201, *amended by* Pub.L. 105–139, 111 Stat. 2644. NACARA effects several more changes to the nation's immigration scheme. First, it codifies *Matter of N–J–B*'s interpretation of IIRIRA section 309(c)(5) Thus, NACARA clarifies that IIRIRA's stop-time provision does apply to orders to show cause issued before IIRIRA's effective date, cutting off an alien's continuous physical presence at the point when she is issued the order to show cause. NACARA § 203(a)(1).

While NACARA thus purports to strip many aliens of the right to apply for suspension of deportation, it simultaneously exempts large classes of aliens from this very result. Certain qualifying Salvadorans, Guatemalans, and Eastern Europeans are exempted from the stop-time provision, and may apply for suspension of deportation (or cancellation of removal, as it is now termed) using the old method for calculating continuous physical presence. *Id.* In addition, another section of NACARA, while not exempting Nicaraguans and Cubans from the stop-time provision, renders that provision irrelevant by granting them the opportunity to apply directly for legal permanent residency status. *Id.* § 202. In effect, this amnesty provision grants those aliens who qualify far greater relief than they could have obtained even under pre-IIRIRA law.

All of these events have led Defendants to now argue that the Court should dissolve its injunction; dismiss the action as moot as to those class members, namely Nicaraguans, Cubans, Salvadorans, Guatemalans, and Eastern Europeans, to whom NACARA either grants amnesty or exempts from the stop-time provision; and grant Defendants summary judgment as to the remaining class members, because of NACARA's codification of *Matter of N–J–B*. In response, Plaintiffs argue that the preliminary injunction has not been mooted as to certain class members by the passage of NACARA because at this point it is still impossible to determine exactly which Plaintiffs will benefit from NACARA's exemption and amnesty provisions; and that a motion for summary judgment as to the remainder of the class is premature in the absence of further factual discovery.

### II. Analysis

### A. The Court Will Not Exercise Its Discretion To Dissolve the Preliminary Injunction Because Plaintiffs Continue To Have Viable Constitutional Claims

Inherent in a district court's equitable power is the authority to revisit and, if

necessary, to modify the terms of an ongoing preliminary injunction.

There is no doubt that the district court has continuing jurisdiction over a preliminary injunction. In the exercise of that jurisdiction, the court is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason.

*Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir.1974)[2] (citations omitted); *accord League of United Latin Am. Citizens v. Pasadena Indep. Sch. Dist.*, 672 F.Supp. 280, 281 (S.D.Tex.1987). When deciding whether to grant such a modification, "a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. United States Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir.1984). A court's determination in this regard is reversible only for an abuse of discretion. *See Sea–Land Serv., Inc. v. International Longshoremen's Ass'n of N.Y.*, 625 F.2d 38, 40 (5th Cir.1980).

■ The Court agrees with Defendants that an intervening change in the governing law would be one circumstance warranting a reappraisal of a court's injunction. Indeed, a change in the law is also grounds for modification of a permanent injunction, even though permanent injunctions need not be altered absent a more stringent showing of changed circumstances. For example, in *Rufo v. Inmates of Suffolk County Jail*, the Supreme Court noted, in the context of consent decrees in institutional reform litigation, that there is "no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." 502 U.S. 367, 380, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (quoting *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961)); accord *Hodge v. Department of Hous. & Urban Dev.*, 862 F.2d 859, 861–62 (11th Cir.1989); *Elgin Nat'l*

*Watch Co. v. Barrett*, 213 F.2d 776, 780 (5th Cir.1954).

■ Based on this reasoning, Defendants argue that the passage of NACARA justifies dissolution of this Court's injunction. Without question, NACARA impacts on the issues in this case. Its codification of the BIA's interpretation of IIRIRA section 309(c)(5) directly refutes this Court's conclusion that *Matter of N–J–B* was likely wrongly decided. Therefore, Plaintiffs' allegation that Defendants are misapplying and thus violating IIRIRA necessarily fails. Plaintiffs cannot continue with that claim in the face of NACARA's unambiguous directive.

However, only to the extent just noted are Plaintiffs' arguments invalidated. As Plaintiffs point out, their Complaint also alleges that retroactive enforcement of section 309(c)(5), as interpreted in *Matter of N–J–B* and now explicitly codified through NACARA, violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706, 3105, 3344 (1994 & Supp.1997), and Fifth Amendment due process. The Court considered these arguments in its order granting the preliminary injunction and specifically found that Plaintiffs had a likelihood of success on the merits of their constitutional claim. Examining the scheme by which Defendants were pretermitting certain aliens' applications for adjustment, the Court concluded, "Distinctions such as these are wholly irrational and not related to any legitimate governmental interest." (Prelim.Inj. at 37.)

The passage of NACARA does nothing to change this. Because NACARA only amends IIRIRA, with the amendments to take effect as if originally enacted in IIRIRA, see NACARA § 204(e), it is still the retroactive application of IIRIRA section 309(c)(5) that Plaintiffs are challenging on constitutional grounds. In fact, Plaintiffs in their Verified Complaint specifically seek "a declaration that the Defendants/Respondents' conduct violates IIRIRA, the INA, the APA, and the due process of the Constitution

---

2. The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

of the United States." (Compl. at 28.)[3] That conduct is the practice of applying section 309(c)(5) so as to bar, retroactively, suspension of deportation relief in certain cases. The Court cannot now ignore this viable argument in order to dissolve the preliminary injunction. The protection it affords Plaintiffs is needed pending a resolution of Plaintiffs' constitutional claim.

## B. The Preliminary Injunction Is Not Moot

Defendants' next argument is that the preliminary injunction is moot as to those class members who are granted specific relief in NACARA. As the Supreme Court has explained, "mootness [is] the 'doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). This requirement devolves from the constitutional prohibition on federal courts issuing advisory opinions. *See, e.g., Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

As Defendants correctly argue, a statutory change may be sufficient to render moot pending litigation. *See, e.g., Native Village of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir.1994); *Hodge*, 862 F.2d at 859; *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346 (D.C.Cir.1997). Regardless of whether the intervening change is legal or factual, however, the key in determining mootness is whether the Court can still "affect the rights of litigants in the case before [it]." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

As noted above, NACARA provides two categories of relief from application of section 309(c)(5).. First, qualifying Nicaraguans and Cubans, although not technically exempt from section 309(c)(5), receive amnesty in the form of the ability to apply for adjustment of status. They therefore can apply directly to become legal permanent residents and need not worry about applying for suspension of deportation. Second, other qualifying aliens who are Salvadoran, Guatemalan, or Eastern European are exempt from section 309(c)(5). As a result, they may apply for suspension of deportation under the pre-IIRIRA rules and have a hearing on their petition.

Defendants argue that because NACARA grants these class members the ultimate relief they seek, namely avoiding deportation due to an inability to pursue applications for suspension, the injunction is now moot as to them. The Court disagrees. Although NACARA makes it clear that certain class members will receive the relief they seek, it is not clear at this time who those class members are. Plaintiffs point to the INS's failure to implement regulations as evidence that it is impossible to currently ascertain which members of the class will be protected by NACARA's provisions. Regulations are not necessary in order for a statute to create a mootness problem. Rather, the lack of regulations points to the potential that some of the class members purportedly protected by NACARA will be bereft of relief once future regulations specify who is a "qualifying" Nicaraguan, Cuban, Salvadoran, Guatemalan, and Eastern European.

Defendants themselves have recognized this possibility. In their response to Plaintiffs' Motion to Dismiss Appeal as Moot, currently pending before the Eleventh Circuit, Defendants stated to the court that "even some Salvadoran, Guatemalan, and Eastern European members of the class may not qualify for the exception from the stop-time provision" and that "[i]t is possible, however, that that [sic] there may be some Nicaraguans and Cubans who will be ineligible for amnesty under NACARA." (Appellants' Opp'n to Appellees' Mot. to Dismiss Appeal as Moot at 23, 25–26) (internal footnotes omitted). In light of these representations to the Eleventh Circuit, it is disingenuous for

---

**3.** The Court acknowledges, however, that both the legislative activity and the changes in executive practice that have occurred may necessitate amendments in the pleadings presently before the Court.

Defendants to now argue to this Court that "there are no unidentified plaintiffs and class members who are entitled to seek relief under NACARA." (Defs.' Reply at 6.) In light of these uncertainties, the Court will not deprive Plaintiffs of the protection of the preliminary injunction by dismissing their claims as moot.

## C. Defendants Are Not Entitled to Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. *See id.* at 919.

■ As discussed above, Plaintiffs continue to have a viable constitutional claim, and they have presented evidence to support it. In the absence of further discovery, and in light of the fact that Defendants have failed to meet their burden of showing that there is no genuine dispute of material fact, the Court will deny summary judgment at this point.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dissolve Injunction, Motion to Dismiss as Moot as to Certain Class Members, and Motion for Summary Judgment as to the Remaining Class be, and the same is hereby, DENIED.

DONE and ORDERED at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 10th day of February, 1998.