Ernest & Eunice BROWN,
et al., Plaintiffs,

v.

PHILADELPHIA HOUSING
AUTHORITY, et al.
Defendants.

No. CIV.A.72–2083.

United States District Court,
E.D. Pennsylvania.

Dec. 13, 2002.

Paul A. Brooks, George Gould, Michael Donohue, Community Legal Services, Inc., Philadelphia, PA, for Plaintiffs.

Alan C. Kessler, Susan J. French, Virginia Lynn Hogben, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Defendants.

## *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

This case involves a Consent Decree entered into by the Plaintiffs and the Philadelphia Housing Authority almost three decades ago. Now before the court is Philadelphia Housing Authority's Motion to Vacate the Consent Decree because of intervening changes in federal law. As

discussed below, the Motion is denied because there have been no federal statutory or regulatory changes that render the prospective enforcement of the Consent Decree inequitable. Defendants have also not demonstrated any conflicts between the Consent Decree and current federal statutes or regulations that would justify vacating the Decree in its entirety.

## I. Background

On October 21, 1972, Plaintiffs filed a Complaint naming the Philadelphia Housing Authority ("PHA"), several PHA employees, and a Landlord and Tenant Officer of the Philadelphia Municipal Court as defendants in a civil rights suit. Plaintiffs sought to represent a class of individuals residing in PHA-owned properties. Plaintiffs alleged that they were being evicted or threatened with eviction by PHA without a prior hearing, in violation of their constitutional right to due process. Plaintiffs also claimed that Circulars published by the U.S. Department of Housing and Urban Development ("HUD") also guaranteed tenants rights including the right to a grievance hearing before PHA sent lease termination notices. *See* HUD Circular RHM 7465.8, 7465.9 (eff.Feb. 22, 1971).

With the approval of the court, the parties entered into a Consent Decree ("Decree"or *"Brown* Decree") on June 14, 1974. The Decree stated that all tenants of PHA-owned buildings were entitled to the rights of HUD Circular RHM 7465.1, § 9(a).[1] To effectuate those rights, the Decree set forth a schedule of notices with which PHA must comply before terminating a lease or commencing eviction proceedings, as well as grievance hearing procedures.[2] On April 17, 1978, the court approved several amendments to the *Brown* Decree pertaining to the grievance hearing appeals process, personal property damage and other claims by tenants, escrow accounts for rent, and emergency grievance hearings. The Decree has not been modified in any way since 1978.

PHA has moved to vacate the Consent Decree in its entirety. PHA contends that significant changes in federal statutes and HUD regulations since the initiation of this litigation have rendered the Decree unnecessary and inconsistent with federal law. As support for their position, PHA cites HUD regulations issued in 1975 and amended in 1991 that replaced the Circulars underlying Plaintiff's Complaint.[3] PHA also cites a federal statute passed in 1983 that requires public housing authorities to implement grievance hearing procedures that are similar to terms of the *Brown* Decree. *See* 42 U.S.C. § 1437d(k). Pursuant to this statute, HUD issued regulations requiring notice before terminating a tenant's lease. *See* 24 C.F.R. § 966.4(*l*)(3) (1991). The notice must specify grounds for termination and inform the tenant of his or her right to reply, examine relevant documents, and request a hearing in accordance with local authority's grievance procedure. *Id.* § 966.4(*l*)(3)(ii). The tenancy may not be terminated until the grievance process has been completed. *Id.* § 966.4(*l*)(3)(iv). Finally, PHA contends that the Decree is inconsistent with federal law, which now allows public housing authorities to adopt streamlined procedures for violent and drug-related criminal activi-

---

1. According to HUD Circular 7465.1, § 9(a), public housing authorities must give tenants notice of any proposed eviction, the grounds for such action, and an opportunity to reply before sending the tenant a Notice of Lease Termination.

2. The specific grievance hearing procedures to be used by PHA were set forth as Exhibit E of the Decree.

3. These regulations are now codified at 24 C.F.R. §§ 966.1–.7, 966.50–.57.

ty evictions, under certain circumstances. *See* 42 U.S.C. § 1437d(k), (*l*).

II. Legal Standard

■ A district court may modify or vacate a consent decree pursuant to Federal Rule of Civil Procedure 60(b), which provides in part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it was based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378–79, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court held that Federal Rule 60(b) did not codify the "grievous wrong" standard of *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In rejecting that standard, the Supreme Court gave courts greater flexibility to modify consent decrees in response to changing conditions. When a party seeks modification of a consent decree, that party bears the burden of showing that "a significant change in circumstances warrants revision of the decree." *Rufo* at 383, 112 S.Ct. 748. If that party meets its initial burden of showing changed factual circumstances or law, then a court "should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* In considering whether to modify a decree, the court has less discretion when the decree conflicts with superseding federal law. The Supreme Court has declared, "A consent decree must of course be modified if as it later turns out, one or more of the obligations placed upon the parties has

become impermissible under federal law." *Rufo* at 388, 112 S.Ct. 748.

Expanding on *Rufo,* the Third Circuit identified several factors that a court should consider before modifying a judgment under Rule 60(b). It cautioned, however, that "[a] court of equity cannot rely on a simple formula but must evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise." *Bldg. & Constr. Trades Council v. NLRB,* 64 F.3d 880, 888 (3d Cir.1995) (denying a motion to modify a labor injunction). The factors identified were:

> [T]he circumstances leading to the entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction.

*Id.* at 888.

The central consideration for courts applying these factors, according to the Third Circuit, was "whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable." *Id.*

■ There is no need to hold an evidentiary hearing on Defendant's Motion to Vacate. According to the Third Circuit, district courts must hold an evidentiary hearing before modifying a consent decree by removing any of its requirements. *See Mayberry v. Maroney,* 529 F.2d 332, 336 (3d Cir.1976) (remanding to the district court to conduct an evidentiary hearing before relieving state officials from consent decree provisions that governed inmate housing). The Third Circuit has identified the limits of this holding:

To say that an evidentiary hearing must be held before a court decides to modify a consent decree does not, however, imply that such a hearing is required before a court refuses to modify a consent decree. A consent decree is, after all, a judgment and is entitled to a presumption of finality.

*Del. Valley Citizens' Council for Clean Air v. Pennsylvania,* 674 F.2d 976, 981 (3d Cir.1982).

■ Because the court is not modifying the *Brown* Decree or removing any requirements previously imposed, an evidentiary hearing is not required.

## III. Discussion

### A. Potential Conflicts between the Consent Decree and Federal Law

■ PHA has moved to vacate the Decree because federal regulations and statutes adopted subsequent to the entry of the Decree allegedly conflict with the terms of the Decree. First, PHA claims that the Decree is inconsistent with federal law, which provides, in relevant part:

> For any grievance concerning an eviction or termination of tenancy that involves ... any violent or drug-related criminal activity ... the agency *may* (A) establish an expedited grievance procedure ... or (B) exclude from its grievance procedure any such grievance, in any jurisdiction which requires that prior to eviction, a tenant be given a hearing in court which the Secretary [of

HUD] determines provides the basic elements of due process ....

42 U.S.C. § 1437d(k) (emphasis added).[4]

Under the *Brown* Decree, tenants allegedly associated with violent or drug-related criminal activity have the right to request a grievance hearing before PHA begins the eviction process. Although the statute provides that housing authorities may elect to pursue evictions for violent or drug-related criminal activity without grievance hearings—if HUD has determined that local judicial procedures provide due process—neither the statute nor HUD regulations prohibits housing authorities from offering grievance hearings.[5] The Decree is not inconsistent with federal law because it may offer greater protection than federal law requires. Parties may bargain and contract for such protection in negotiating a settlement.

In addition, because HUD has not determined that the judicial eviction procedures of Philadelphia Municipal Court provide the basic elements of due process, federal law prohibits PHA from pursuing eviction in that court without offering a tenant a grievance hearing. Therefore, the Decree is consistent with federal law in guaranteeing grievance hearings in Municipal Court eviction actions for alleged violent or drug-related criminal activity. HUD issued a determination in 1992 that judicial eviction procedures of Philadelphia Common Pleas Court met the basic requirements of due process. The Secretary explicitly noted,

4. In 1983, Congress added subsection (k), as well as subsection (*l*), to 42 U.S.C. § 1437d. *See* Pub.L. No. 98–181, § 204 (1983). These subsections were amended by Pub.L. Nos. 100–242, § 170(d)(3), 100–690 (1988); Pub.L. No. 101–625, §§ 503, 504 (1990); Pub.L. Nos. 104–120, § 9, 104–193, § 903(a)(1) (1996); and Pub.L. No. 105–276, §§ 512(b), 575(a) (1998).

5. The regulations promulgated under 42 U.S.C. § 1437d(k) mirror the language used in the statute. *See* 24 C.F.R. § 966.51(2)(i) ("If HUD has issued a due process determination, a PHA may exclude from the PHA administrative grievance procedure under this subpart any grievance concerning a termination of tenancy or eviction that involves ... (B) Any violent or drug-related criminal activity on or off such premises....").

however, that the determination did not apply to evictions pursued in Municipal Court. *See* Letter from Jack Kemp, Secretary of HUD, to Governor Robert P. Casey 16, n. 7 (July 9, 1992) (Pls.' App. B) ("This due process determination does not apply to an eviction action in the Philadelphia Municipal Court (since the form of complaint in that court does not provide notice of the grounds for eviction)."). PHA files the majority of its eviction actions in Philadelphia Municipal Court. PHA does pursue some evictions for drug-related criminal activity in the Philadelphia Court of Common Pleas in accordance with the Expedited Eviction of Drug Traffickers Act, 43 P.S. § 780–151 *et seq.* ("EEDTA"). HUD certified that the Philadelphia Common Pleas Court procedures satisfied due process in 1992, three years before the EEDTA, which creates new procedures for these types of evictions, was passed. Therefore, it is not obvious that federal law even permits EEDTA evictions in Philadelphia Common Pleas Court if PHA does not offer tenants the opportunity to request a grievance hearing, as the *Brown* Decree requires.

The absence of a HUD determination as to Municipal Court procedures distinguishes *Brown* from *Gilmore v. Housing Authority of Baltimore City*, 170 F.3d 428 (4th Cir.1999), where the Court of Appeals for the Fourth Circuit vacated a consent decree relating to public housing evictions. The *Gilmore* consent decree dealt solely with the grievance rights of public housing tenants charged with crimes. Because Congress amended the federal statute to allow evictions of such tenants without grievance hearings if HUD certified the judicial process to provide due process— and because it had certified all the relevant Baltimore court procedures—the court held that the decree should be vacated. In contrast to the situation in *Gilmore*, HUD has never determined that the Philadelphia Municipal Court procedures, used for the majority of PHA evictions, satisfy the basic elements of due process. In addition, unlike the *Gilmore* decree, the *Brown* Decree covers more than grievance hearings for tenants allegedly involved in illegal activity. Vacating the entire Decree is therefore less appropriate than it was in *Gilmore*, where HUD regulations overlapped with the entire Decree.

■ Second, PHA argues that in light of the federal regulations allowing certain evictions for violent and drug-related criminal activity without grievance hearings and the Supreme Court decision in *Department of Housing & Urban Development v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), the *Brown* Decree is inconsistent with federal policy. In *Rucker*, the Supreme Court held that federal law requires that public housing authorities use leases that allow authorities to evict tenants for the drug-related criminal activity of household members and their guests. *Rucker*, 122 S.Ct. at 1233; 42 U.S.C. § 1437d(*l*)(6) (1994 ed., Supp. V). The lawsuit in *Rucker* concerned HUD regulations that permitted public housing authorities to terminate a tenant's lease for any drug-related criminal activity that occurs on or near the leased premises, whether the activity was engaged in by the tenant, any member of the household, a guest, or anyone under the tenant's control. *See* 24 C.F.R. § 966.4(f)(12)(i), (*l*)(5)(i) (2001). The lower courts held that these regulations were an unlawful interpretation of the federal statute.[6] *See*

---

6. The section of the relevant statute provided: "any drug-related criminal activity on or off the premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. § 1437d(*l*)(6) (1994 ed., Supp. V).

*Rucker v. Davis,* 1998 WL 345403 (N.D.Cal. June 19, 1998), *aff'd on reh'g,* 237 F.3d 1113 (9th Cir.2001). The Supreme Court reversed, finding the statute unambiguous and constitutional. *Rucker,* 122 S.Ct. at 1236.

*Rucker* approves regulations that permit a greater number of drug crime-related evictions. Although the federal government might understandably favor greater flexibility to evict tenants associated with such activity, this policy does not make any of the obligations of the *Brown* Decree impermissible under federal law. The *Brown* Decree does not have any effect on whom PHA may evict based on drug or criminal activity on the premises.

■ Finally, PHA argues that the Decree is inconsistent with a federal policy in favor of uniform grievance procedures. PHA cites a portion of a comment that accompanied new HUD regulations in 1991:

> Federal grievances requirements should be uniform for all [public housing authorities] and should not depend on the historical accident of whether a [public housing authority] has a different grievance procedure which was adopted under the old circular or rule. All [public housing authorities] must adopt grievance procedures within the requirements of the new rule.

56 Fed.Reg. 51,572 (Oct. 11, 1991).

This excerpted comment was in response to a proposal that HUD require all housing authorities to retain pre–1991 grievance hearing procedures unless tenants approved new procedures. When read in context, the comment does not mean that all grievance hearing procedures must be replaced with federal procedures, but rather that all grievance procedures at least meet the standards established by the 1991 regulations.

Those regulations do not bar additional procedural rights or local variation in grievance procedures, as long as the federal standards are met. The grievance hearing procedures prescribed by the *Brown* Decree are in full compliance with these standards.

Even if any inconsistencies exist between the Decree and current federal law or HUD regulations, vacating the entire Decree would not be appropriate because the court should only modify a consent decree to the extent that its enforcement is no longer equitable. *See Rufo,* 502 U.S. at 383, 112 S.Ct. 748 ("[T]he court should consider whether the proposed modification is suitably tailored to the changed circumstance.").

### B. Continuing Justification for the Decree

■ PHA claims that changes in federal law have eliminated both the basis and the need for the *Brown* Decree. Upon careful consideration of the facts presented and the current federal statutes and regulations, the court finds that changes in federal law do not warrant vacating the Decree pursuant to Federal Rule of Civil Procedure 60(b).

PHA notes that HUD regulations issued in 1975 dealt with largely the same subject matter as the Decree and the Circulars on which it was, in part, based.[7] The fact that these HUD Circulars have been replaced with similar HUD regulations is not, by itself, a justification for vacating the *Brown* Decree. A case cited by PHA, *System Federation No. 91, Railways Employees' Department v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), is readily distinguishable. In *Wright,* the Supreme Court upheld the modification of a consent decree that prohibited discrimi-

---

**7.** Now codified at 24 C.F.R. §§ 966.1–6, 966.50–59, as amended in 1991.

nation against non-union employees, based on federal labor laws. Although the decree was entered into when the federal labor laws prohibited "union shop" contracts, the laws were later amended to permit such agreements, which require all workers to join the union. Accordingly, the Court found that there was no longer any legal basis for the Decree. *Id.* at 651–52, 81 S.Ct. 368. In contrast, although the Plaintiffs in *Brown* asserted that HUD Circulars guaranteed various procedural rights, the underlying basis for their suit and the Decree was the protection of due process rights. Moreover, the Circulars cited in the *Brown* Decree were never overruled or repealed like the statutory provisions in *Wright,* but replaced and expanded upon in terms largely consistent with the Decree.

PHA also argues that the Consent Decree was conditioned on the applicability of the pre–1975 HUD Circulars. The Decree provides, in part:

> As is required by HUD Circulars RHM 7465.8 and .9, all public housing tenants who are adversely affected by an action or failure to act on the part of [PHA] are entitled to a hearing which complies with the provisions of RHM 7465.9, Section 3.[PHA] shall not be bound by these procedures if it is not required by law to comply with said circulars.

*Brown* Decree, ¶ I.B.1.

This conditional statement applies to the requirement that PHA provide a grievance hearing that complies with Circular 7465.9, § 3, but does not appear where the Decree sets forth the specific grievance hearing procedures or other requirements. Furthermore, it would be inequitable to vacate the Decree because HUD Circulars on which some of its provisions were based were replaced with regulations that guarantee the same or greater rights to Plaintiffs. If there was any question in 1974 that PHA did not have to comply with HUD circulars, there is no doubt that it must comply with the superseding HUD regulations. In addition, the Decree was based on federal statutes and the Due Process Clause of the Constitution, not merely the HUD Circulars.

As support for their claim that the *Brown* Decree should be vacated because changes in federal law replaced the basis for the Decree, PHA cites *Hodge v. Department of Housing & Urban Development,* 862 F.2d 859 (11th Cir.1989). In *Hodge,* the Eleventh Circuit discussed the appropriate substantive standard to be applied in considering whether to modify a consent decree under Federal Rule of Civil Procedure 60(b)(5). *Hodge* at 862. After discussing *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and Eleventh Circuit case law, the court held that modification of a consent decree was appropriate where its purposes had been realized. *Id.* The Eleventh Circuit also held that a consent decree cannot mandate "special requirements" above the protections of the federal laws and that a decree should be modified if it compels an outcome similar to that under federal law. As *Hodge* preceded the Supreme Court's decision in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), its discussion of the standards under Federal Rule of Civil Procedure 60(b)(5) and a court's discretion to enforce a consent decree that goes beyond the requisites of federal law is not persuasive.

■ The fact that federal law now requires PHA to follow procedures that offer more protection to PHA tenants than federal law did when the *Brown* Decree was adopted does not compel the conclusion that the Decree is no longer needed. Even if the current regulations and judicial procedures utilized by PHA protected the plaintiff class from violations of due

process, it is far from clear that the court should vacate the Decree. As the Third Circuit has stated, "A consent decree is the product of negotiation between the parties and embodies a compromise struck among various factors, including the parties' competing goals and the time, expense, and risk of litigation." *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir.1998) (citing *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). Parties are free to bargain for more than is constitutionally required and the court need not modify a decree if the risk of constitutional deprivations is subsequently reduced.

In their Motion to Vacate, PHA states: "No orders have been entered in this action for almost thirteen years. Indeed, nothing at all has been filed in this action in almost thirteen years." Def.'s Motion at 4 (citations omitted). While the Consent Decree has remained unaltered since 1978, it continues to affect Plaintiffs and PHA. The *Brown* Decree has governed PHA grievance hearings since 1974. Courts in this district continue to enforce the specific grievance procedures and other rules set forth in the Decree. *See, e.g., Jackson v. Philadelphia Hous. Auth.*, Civ. A. No. 96–1173, 1996 WL 363928, at *1 (E.D.Pa. June 20, 1996) ("Plaintiff ... filed a grievance pursuant to 24 C.F.R. §§ 966.50–966.57 and, more specifically, the Philadelphia Housing Authority Tenant Grievance Procedures ... as set forth in the *Brown* consent decree."); *Wallace v. Philadelphia Hous. Auth.*, Civ. No. 95–04261, 1996 WL 273646, at *1 (E.D.Pa. May 21, 1996) ("Plaintiff [sought] enforcement of the grievance arbitration award. The grievance procedure was in accord with *Brown v. PHA* ... and as further provided under the Fair Housing Act, 42 U.S.C. § 1437 and regulations adopted thereunder, 24 C.F.R. § 966, *et seq.*"); *Farley v. Philadelphia Hous. Auth.*, Civ. A. No. 95–6616, 1996 WL 103775, at *1 (E.D.Pa. Mar.8, 1996) ("Public housing authorities are required to have grievance procedures. 24 C.F.R. § 966.50. The specific grievance procedures which PHA must follow are set forth in the consent decree in *Brown v. Philadelphia Housing Authority* ...."); *Rivera v. Philadelphia Hous. Auth.*, Civ. A. No. 95–7658, 1996 WL 99744, at *1 (E.D.Pa. Mar.6, 1996) ("The specific grievance procedures which PHA must obey are set forth in *Brown v. Philadelphia Housing Authority* .... A grievance decision is binding upon the PHA. *Id.*; 24 C.F.R. § 966.57(b)."); *Adams v. Philadelphia Hous. Auth.*, Civ. No. 95–3237, 1996 WL 32881, at *1 (E.D.Pa. Jan.22, 1996) ("The *Brown* decree provided that the grievance is binding on the PHA, and federal regulations also mandate that the grievance decision 'shall be binding on the PHA which shall take all actions, or refrain from all actions, necessary to carry out the decision.' "); *Caldwell v. Philadelphia Hous. Auth.*, Civ. A. No. 95–2069, 1995 WL 631665, at *2 (E.D.Pa. Oct. 27, 1995) ("Only upon a reasonably prompt decision ... may the Grievance Award be held unenforceable .... This requirement is reiterated in the *Brown* consent decree, which sets out the grievance procedure for hearings involving the Philadelphia Housing Authority in particular.").

From this sample of cases applying the Decree after the 1991 HUD regulations, the court finds that the *Brown* Decree clarifies PHA's obligations to tenants, provides specific grievance hearing procedures consistent with the statutory requirements, and supplements the requirements under current HUD regulations. Given that the Decree still serves these functions, vacating the Decree in its entirety is not justified under the standard set forth in Rule 60(b) and the Supreme Court in *Rufo.*

### 1. Factors from Building & Construction Trades Council v. NLRB

■ In considering whether or not to vacate the *Brown* Decree, it is helpful to review the factors set forth by the Third Circuit in *Building & Construction Trades Council v. NLRB*, 64 F.3d 880, 888 (3d Cir.1995). As to the first factor, the circumstances and purpose of the decree, the parties in *Brown* entered into the Consent Decree to settle a class action for PHA's failure to comply with several HUD Circulars and to provide due process to tenants facing eviction. The Decree sought to prevent PHA from denying due process to its tenants by, *inter alia*, affording the right to certain grievance hearing procedures before PHA began the eviction process.

The second factor according to *Building & Construction Trades*, is the length of time since entry of the consent decree. *Id.* at 888. PHA emphasizes the fact that the *Brown* Decree has been in place for over 30 years. The mere passage of time, however, does not warrant vacating a consent decree if its prospective application is still equitable.

The third factor is whether the party subject to the terms of the decree has complied, or attempted to do so in good faith, and the likelihood that the conduct sought to be prevented will recur if the decree is modified. *Bldg & Constr. Trades* at 888. Although PHA has largely complied with the Decree and its grievance hearing procedures, courts in this district have found PHA in violation of federal regulations and the Decree itself. *See, e.g., Drennon v. Philadelphia Hous. Auth.,* Civ. A. No. 92–6155, 1993 WL 197450, at *4 (E.D.Pa. June 2, 1993) ("[D]efendants have deprived the plaintiff of her rights in violation of 42 U.S.C. § 1983 by: . . .(b) their failure to comply with the grievance process mandated by 24 C.F.R. §§ 966.5 et seq.; (c) their failure to comply with the provisions of the consent decree in *Brown v. PHA,* C.A. # 72–2083 (E.D.Pa.1974)"); *Adams v. Philadelphia Hous. Auth.,* Civ. A. No. 95–3237, 1996 WL 32881 (E.D.Pa. Jan.22, 1996). In addition, PHA has taken the position that tenants accused of drug-related criminal activity are not entitled to a grievance hearings before PHA files for eviction in Municipal Court. *See* Notice, Pls.' App. C ("You are *not* entitled to a grievance hearing if the proposed action is for criminal and/or drug related activity."). The procedures of Municipal Court, however, have not been certified as meeting due process because the complaint does not notify tenants of the grounds for eviction. Such a statement conflicts with the Decree and appears to evade the HUD Regulations requiring that housing authorities give tenants written notice of lease termination that states the grounds for termination and informs the tenant of his or her right to request a hearing in accordance with the agency's grievance procedures. *See* 24 C.F.R. § 966.4(*l*)(3)(ii). The Decree provides assurance to the Plaintiffs that these grievance hearing procedures and other rights will be preserved, because regulations may be deleted or amended at HUD's or congressional direction.

Finally, the Third Circuit has stated that when considering whether to modify a consent decree, a court should focus on "whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable." *Bldg. & Constr. Trades,* 64 F.3d at 888. None of the changed factual or legal circumstances cited by PHA as justification for vacating the Decree were unforeseen. At the time that PHA entered into the Consent Decree in 1974, it was not unforeseeable that HUD would issue regulations in the future that might clarify, expand, or otherwise alter

the protections given public housing tenants. Although the Consent Decree may provide for grievance hearings in some cases where the federal law would not, the parties have not presented the court with any evidence that the Decree is unworkable or compliance is substantially more onerous than it was in 1974.

IV. Conclusion

■ Parties are entitled to the benefits of their negotiated settlement, as long as the terms of the Consent Decree are not inconsistent with federal law and it is still equitable that the settlement be enforced. To the extent that the *Brown* Decree provides greater protection to tenants of their constitutional rights than current federal statutes and regulations, it is not inconsistent with federal law, but merely supplements and clarifies federal requirements. As the Supreme Court explained, "To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements . . . ." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 389, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Similarly, the mere passage of time does not justify undercutting the finality of a judgment.

Changes in federal statutes and regulations that give housing authorities greater flexibility in their attempts to evict tenants involved in criminal activity do not conflict with the terms of the *Brown* Decree. Even if PHA could take advantage of streamlined eviction procedures for violent and drug-related criminal activity, federal law does not require grievance hearings to be eliminated for these evictions. PHA has not shown that it has been in full compliance with the Consent Decree, particularly in view of its public position that tenants accused of illegal activity are not entitled to a grievance hearing, even though the Philadelphia Municipal Court procedures that PHA primarily uses to accomplish eviction of these tenants do not comply with due process.

An appropriate Order follows.

**AND NOW,** this 13th day of December, 2002, upon consideration of the Motion of Defendant Philadelphia Housing Authority to Vacate Consent Decree, Plaintiff's Answer in Opposition to Defendant's Motion, and Defendant's Reply to the Answer, it is **ORDERED** that said Motion is **DENIED**.